06-4152-cv, 06-4179-cv
Reddington v. Staten Island University Hospital

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2007

(Argued: October 11, 2007      Decided: December 14, 2007)

Docket Nos. 06-4152-cv(L), 06-4179-cv(XAP)

_____

CARMEL REDDINGTON,
*Plaintiff-Appellant-Cross-Appellee,*

-v.-

STATEN ISLAND UNIVERSITY HOSPITAL and
NORTH SHORE LONG ISLAND JEWISH HEALTH SYSTEM,
*Defendants-Appellees-Cross-Appellants.*

_____

Before:     KATZMANN, LIVINGSTON, *Circuit Judges*, and
KORMAN, *District Judge.*[*]

Employee brought claims against former employer for age discrimination, violation of whistleblower protection law, and breach of contract. The United States District Court for the Eastern District of New York, I. Leo Glasser, J., 373 F. Supp. 2d 177, dismissed the whistleblower and contract claims. The parties agreed to dismiss the age discrimination claims with prejudice. Employee

---

[*] The Honorable Edward R. Korman, Senior District Judge, United States District Court for the Eastern District of New York, sitting by designation.

appealed the dismissal of her whistleblower and contract claims, and employer cross-appealed, seeking attorneys' fees.

Affirmed in part and questions certified.

JONATHAN BEHRINS, Behrins & Behrins, P.C., Staten Island, NY, *for Plaintiff-Appellant-Cross-Appellee.*

JAMES D. WILLIAMS, JR. (David O. Simon, *on the brief*), Epstein Becker & Green, P.C., New York, NY, *for Defendants-Appellees-Cross-Appellants.*

LIVINGSTON, *Circuit Judge*:

Plaintiff-appellant Carmel Reddington appeals from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *J.*) dismissing her claims against her former employer, defendants-appellees Staten Island University Hospital and North Shore Long Island Jewish Health System, Inc. (the "Hospital"), for termination in violation of New York's whistleblower protection law and for breach of an employment contract. This case calls upon us to resolve two significant questions arising under section 740 of the New York Labor Law, New York's general whistleblower protection law, and section 741, a whistleblower protection statute enacted in 2002 that provides certain protections to employees performing "health care services." For the reasons that follow, we believe these questions should be answered by the

New York courts, and we accordingly certify them to the New York Court of Appeals.

The district court also held that Reddington failed to allege facts sufficient to show the existence of an employment contract between the parties and that Reddington had therefore failed to state a claim for breach of such a contract. As to this claim, we agree with the decision of the district court and accordingly affirm the judgment of dismissal. We retain jurisdiction to consider the Hospital's cross-appeal after we have learned the views of the New York Court of Appeals regarding the certified questions or that court declines certification.

**BACKGROUND**

The following facts are taken from Reddington's amended complaint and supporting documents, which we must assume to be true in reviewing a Fed. R. Civ. P. 12(b)(6) dismissal. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 165 (2d Cir. 2005).

Reddington was an employee of the Hospital from December 19, 1994, to October 30, 2002. She was hired as a Coordinator of Volunteer Services and in March 1998 received a promotion to Manager of Volunteer Services. In February 2002, Reddington attended a meeting at which Joseph Conte, one of the Hospital's Vice Presidents, discussed his plans to offer radiation treatment

to cancer patients coming from Italy. After the meeting, Reddington told Conte that she spoke Italian, knew Italian culture and customs, and would be able to assist.

In May 2002, Conte invited Reddington to meet with him and Dr. Gilbert Lederman, the Hospital's Director of Radiation Oncology. At this meeting, Conte and Dr. Lederman told Reddington that several Italian families were at the Hospital and asked her if she would serve as a translator for them while continuing to perform her duties as Manager of Volunteer Services. Reddington agreed to do so until the Hospital hired a full-time employee to serve as a translator.

Upon meeting the Italian families for the first time, Reddington was "besieged with complaints of inadequate and non-treatment, abandonment, and failure to provide a translator." (Am. Compl. ¶ 21.) Reddington reported these complaints to Dr. Lederman and later to Conte; nevertheless, the patients' complaints were not addressed and persisted for the next several days.

On May 21, 2002, Dr. Lederman asked Reddington to notify the Italian patients of an upcoming meeting. At this meeting, Reddington translated the patients' needs and concerns to Dr. Lederman and other officers of the Hospital.

In June 2002, Reddington served as a translator at another meeting attended by, among others, Conte, Dr. Lederman, and two supposed doctors from

4

Italy. The attendees at this meeting discussed the possibility of opening a second office in Italy that would be managed by one of the Italian doctors. This doctor would receive a referral fee for each patient he referred to the Hospital for treatment, just as the other doctor was already receiving referral fees in connection with an existing Italian office. Reddington expressed concerns regarding the propriety and legality of this referral fee arrangement to Conte on several occasions, but he did not respond to these concerns or otherwise take any action.

Over the next two months, Reddington continued to work with the Hospital's Italian patients, and they continued to report concerns. In August 2002, Reddington met with Andrew Passeri, whose position with the Hospital is not alleged in the complaint, to again report the inadequate care being afforded the Italian patients. Passeri expressed surprise that Conte had not addressed the patients' concerns and then asked Reddington to be the director of a new International Visiting Patient Program. Reddington alleges that she inquired whether she would be able to return to her position as Manager of Volunteer Services if the opportunity did not work out favorably and that Passeri assured her that she would always be able to return to her former job.

Reddington met with Anthony Ferreri, the Hospital's Senior Vice President of Human Resources, on August 20, 2002, to discuss her new position.

She reiterated her concerns about being able to return to her former position, and Ferreri gave her the same assurances she had received from Passeri. She also expressed concern that she was leaving for a vacation and would not be able to train the person who would be hired to replace her as Manager of Volunteer Services. Ferreri assured her that she should not be alarmed, for the Hospital already had a candidate for the job in mind.

Reddington returned from her vacation and, on August 30, 2002, received and signed a written job description for her new position as "Director — International Patient Program," reporting to Conte. Her duties and responsibilities, as set forth in the job description, were as follows:

1. Coordinate arrival, transportation and lodging for international patients and ensure continuity with clinical services staff.

2. Coordinate and develop with Chief Medical Officer and appropriate medical personnel, services to be offered to international patients.

3. Coordinate marketing of the international patients program with Senior Staff.

4. Manage and train personnel providing translation services and maintain an on-call schedule to ensure coverage.

5. Maintain International Patients Welcome Center to promote positive image of Staten Island University Hospital and its services.

6. Develop calendar of activities for international patients to further enhance their experience at Staten Island University Hospital.

6

7.  Maintain up to date data base on patients serviced.

8.  Distribute, collect and analyze patient satisfaction questionnaires to continually enhance services.

9.  Communicate with consulate to coordinate patient's letters of service.

In her new position, Reddington continued to report complaints to Conte. In September 2002, for example, one of the Italian physicians with whom the Hospital worked expressed to Reddington his frustration that he was required to send prospective patients' pathology slides to the Hospital. Conte explained to Reddington that the pathology slides were necessary because the Hospital, which had previously treated two patients who did not have cancer, was attempting to avoid unnecessary treatments. In October 2002, Reddington went to see Conte again to discuss concerns of inadequate patient care. Reddington complained that her management of the Program was being undermined by Elaine Burke, Ferreri's administrative assistant. Reddington later reported this concern to Ferreri. Conte and Ferreri were unresponsive.

On October 25, 2002, Reddington received a phone call from Margaret D'Alto, a Vice President of Human Resources at the Hospital, asking Reddington to meet. At this meeting, Reddington related her concerns, including the concerns that she had previously expressed to Conte and Ferreri. D'Alto responded by saying that Reddington's concerns were legitimate and that D'Alto

7

would investigate further. D'Alto also stated that Conte was very concerned that Reddington had spoken to Passeri's wife and told Reddington that in the future Burke would be the go-between if Reddington needed to contact Conte. Finally, D'Alto asked Reddington to meet again on October 30.

At the meeting on October 30, D'Alto accused Reddington of calling Conte directly after being told to contact Burke if she wished to reach Conte. Reddington replied that she had not understood that she was not permitted to call Conte and that she had done so to coordinate the transportation of a dead patient's body to England. D'Alto said that Reddington's job responsibilities related only to Italian patients, but Reddington replied that D'Alto's understanding was incorrect and that she had spent several hours during the previous day with the British patient's family. At the conclusion of this meeting, D'Alto dismissed Reddington from her job. Reddington asked if she could return to her former position as Manager of Volunteer Services, and D'Alto refused. Reddington asked what she had done wrong, and D'Alto replied that she had disobeyed orders.

In November 2002, Reddington contacted the New York State Department of Labor, which advised Reddington to obtain a written statement of the Hospital's reasons for terminating her. After several requests by Reddington, the Hospital sent her a letter dated December 10, 2002, stating that she was

8

terminated for probationary failure, even though Reddington was never informed that her new position involved a probationary period.

After receiving a right-to-sue notice from the Equal Employment Opportunity Commission, Reddington filed a complaint in the United States District Court for the Eastern District of New York on March 16, 2004. In the complaint, Reddington alleged numerous causes of action: violations of federal, state, and municipal laws prohibiting age discrimination in employment; violation of the New York Whistleblower Law, N.Y. Lab. Law § 740; violation of the New York Health Care Whistleblower Law, N.Y. Lab. Law § 741; violation of the Fair Labor Standards Act; intentional infliction of emotional distress; and breach of contract. The defendants moved: (1) to dismiss the complaint for failure to state a claim and for lack of subject-matter jurisdiction; and (2) for an award of attorneys' fees under N.Y. Lab. Law § 740(6). Reddington amended her complaint on August 24, 2004, withdrawing the claims arising under N.Y. Lab. Law § 740 and the Fair Labor Standards Act, as well as her claim for intentional infliction of emotional distress. The defendants again moved to dismiss and for an award of attorneys' fees.

On June 21, 2005, the district court ruled on the defendants' motion. *Reddington v. Staten Island Univ. Hosp.*, 373 F. Supp. 2d 177 (E.D.N.Y. 2005). The district court granted the motion in part, dismissing Reddington's claims

under N.Y. Lab. Law § 741 and for breach of contract, *id.* at 187, 190, and denied the motion in part, finding that Reddington had stated claims under federal, state, and municipal age discrimination laws. *Id.* at 188. The court declined to award attorneys' fees to the Hospital. *Id.* at 189. After discovery on the age discrimination claims, the parties stipulated to dismissal of these claims with prejudice, which led to the entry of final judgment. This appeal followed.

## DISCUSSION

"We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Although "the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). "To survive dismissal, the plaintiff must provide the grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965 (2007)).

# I. Jurisdiction

Before turning to the merits, we are obligated to satisfy ourselves that we have jurisdiction, even if the parties have not argued to the contrary. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). Reddington invoked the district court's federal-question jurisdiction by bringing a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626©, and the district court properly exercised its supplemental jurisdiction over Reddington's factually related claims under state and municipal law, 28 U.S.C. § 1367(a). At the time the district court dismissed Reddington's claims under N.Y. Lab. Law § 741 and for breach of contract, the district court undoubtedly had jurisdiction over these supplemental claims. Subsequently, the parties agreed to dismiss the claims of age discrimination — a group that includes the sole federal claim in this case — with prejudice. The dismissal of these claims does not deprive us of subject-matter jurisdiction over Reddington's appeal. *See* 28 U.S.C. § 1291; *Rosado v. Wyman*, 397 U.S. 397, 405 (1970) ("We are not willing to defeat the commonsense policy of pendent jurisdiction . . . by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim."); *Gem Corrugated Box Corp. v. Nat'l Kraft Container Corp.*, 427 F.2d 499, 501 n.1 (2d Cir. 1970). Moreover, because, as discussed below, we have decided to certify the novel questions of state law in

this case to the New York Court of Appeals, we have no occasion to consider whether we may or should decline to exercise our jurisdiction on account of the novelty of these questions.

## II.  New York Labor Law § 741

New York's Health Care Whistleblower Law prohibits an employer from, among other things, "tak[ing] retaliatory action against any employee because the employee . . . discloses or threatens to disclose . . . an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care."  N.Y. Lab. Law § 741(2). The statute defines "employee" to mean "any person who performs health care services for and under the control and direction of any public or private employer which provides health care services for wages or other remuneration."  *Id.* § 741(1)(a).

The district court concluded that Reddington did not state a claim under section 741.  It based its conclusion on two alternative grounds: first, that Reddington waived her claim under section 741, the health care whistleblower provision, by previously initiating an action under section 740, New York's general whistleblower provision; and second, that Reddington was not an employee within the meaning of section 741. *Reddington*, 373 F. Supp. 2d at

12

185-87, 187 n.7.  The Hospital urges each of these grounds as a basis for affirmance.  We address them in turn.

### A.  Did Reddington Waive Her Claim?

The Hospital's principal argument is that Reddington waived her claim under section 741 by including an action under section 740, New York's general whistleblower provision, in her initial complaint.  The statute of limitations applicable to a claim brought under section 740 is one year from the time of the alleged unlawful employment action, N.Y. Lab. Law § 740(4)(a), but the limitations period applicable to a claim brought under section 741 is two years, *id.* § 740(4)(d). Reddington filed her complaint almost eighteen months after the Hospital terminated her.  She originally charged unlawful termination under both sections 740 and 741, but she omitted the section 740 charge from her amended complaint after the defendants moved to dismiss it as time-barred.

Section 740 contains an election-of-remedies provision that states as follows:

> Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective

13

> bargaining agreement, law, rule or regulation or under the common law.

*Id.* § 740(7). Two relevant questions arise from this provision. First, did Reddington trigger this waiver provision by including a section 740 claim in her initial pleading? Second, if so, what causes of action did the waiver affect?

When we consider issues of New York law, our task is to determine how the New York Court of Appeals would decide them. *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). We owe no deference to the district court's interpretation of New York law. *Elliot Assocs., L.P. v. Banco de la Nación*, 194 F.3d 363, 370 (2d Cir. 1999). Decisions of New York's intermediate appellate courts are "helpful indicators" of how the Court of Appeals would decide, but we are not "strictly bound" by decisions of the Appellate Division, particularly when we have "'persuasive data'" that the Court of Appeals would "'decide otherwise.'" *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)). For the reasons we describe below, we believe that it is appropriate for the New York Court of Appeals, if it so chooses, to address the state law issues regarding the scope of section 740 waivers that are raised by this case.

1. Did Reddington Trigger the Waiver?

The second clause of N.Y. Lab. Law § 740(7) provides, in relevant part, that the *institution* — not the maintenance, pendency, or favorable resolution — of an action in accordance with section 740 "shall be deemed a waiver of the rights and remedies available under any other . . . law." Several courts have suggested that the inclusion of a section 740 claim in a complaint triggers the waiver even if the section 740 claim is facially defective and even if the claim is promptly withdrawn.

For example, in *Pipia v. Nassau County*, 826 N.Y.S.2d 318 (App. Div. 2006), the plaintiff alleged a violation of section 740, as well as eight other causes of action, seven of which arose from an allegedly unlawful termination. He moved for leave to amend the complaint to withdraw the section 740 claim and replace it with a section 741 claim. The Appellate Division held that the amended complaint did not state a claim under section 741, and the court also dismissed the seven claims related to the termination because "[t]he mere commencement of an action under Labor Law § 740(4) . . . acts as an election of remedies, waiving other causes of action relating to the alleged retaliatory discharge, irrespective of the disposition of such claims." *Id*. at 320.

Similarly, in *Hayes v. Staten Island University Hospital*, 834 N.Y.S.2d 274 (App. Div. 2007), the plaintiff alleged a violation of section 740 and breach of contract. The Appellate Division held that the plaintiff could not proceed on her

contract claim even after she withdrew her section 740 claim. *See id.* at 275 ("[T]he plaintiff's attempt to amend the complaint to exclude the Labor Law § 740 cause of action did not nullify the waiver." (citations omitted)).

Other courts have adopted a somewhat more flexible reading, allowing plaintiffs a grace period within which they can withdraw section 740 claims and nullify the effect of the waiver. *See, e.g.*, *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at \*7 (E.D.N.Y. July 9, 2004) ("The court will permit withdrawal of the whistleblower claims . . . by amendment within thirty days. Withdrawal will be deemed the equivalent [of] failing to file the claim."). The court in *Nicholls* interpreted the waiver provision to mitigate what it saw as a "harsh result." *Id.*

2. Does the Section 741 Claim Fall Within the Waiver's Scope?

The two clauses of section 740(7) would seem potentially to contradict each other — the first assuring that "[n]othing in this section shall be deemed to diminish the rights . . . or remedies of any employee under any other law" and the second excepting that "the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other . . . law." N.Y. Lab. Law § 740(7). As one federal district court has put it, "[o]n a plain reading of Clause Two, New York's whistleblower regime not only

'diminish[es]' other rights, but for employees who seek its shelter, it eviscerates them." *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 262-63 (S.D.N.Y. 2001) (second alteration in original).

Responding to this apparent incongruity, courts have adopted differing and sometimes contradictory limiting constructions of this waiver. New York state courts have generally held that the waiver applies to all causes of action that relate to the retaliatory discharge, which may include contract claims, *see Hayes*, 834 N.Y.S.2d at 275; *Bordan v. N. Shore Univ. Hosp.*, 712 N.Y.S.2d 155, 157 (App. Div. 2000), tort claims, *see Pipas v. Syracuse Home Ass'n*, 641 N.Y.S.2d 768, 768 (App. Div. 1996), and claims arising under state antidiscrimination laws, *see Owitz v. Beth Isr. Med. Ctr.*, No. 600331/03, 2004 WL 258087, at \*3 (N.Y. Sup. Ct. Jan. 29, 2004). Federal district courts, in contrast, generally interpret the waiver as applying "only to rights and remedies concerning whistleblowing," *Collette*, 132 F. Supp. 2d at 274; *see also Reddington*, 373 F. Supp. 2d at 185-86; *Nicholls*, 2004 WL 1533831, at \*6, and therefore deem it not to apply, for example, to claims of employment discrimination. *Collette*, 132 F. Supp. 2d at 274. Additionally, federal courts have interpreted the provision not to waive or otherwise affect rights arising under federal law. *Id.* at 266; *Nicholls*, 2004 WL 1533831, at \*6; *United States ex rel. Mikes v. Straus*, 853 F. Supp. 115, 121 (S.D.N.Y. 1994).

17

Whatever the proper scope of the section 740 waiver, there is an additional consideration here related to the district court's conclusion that a claim under section 741 falls within it. The waiver, by its terms, relates to "rights and remedies available under any *other* . . . law." N.Y. Lab. Law § 740(7) (emphasis added). Although section 741, the health care whistleblower provision, provides a set of rights distinct from the rights created by section 740, the general whistleblower law, an employee aggrieved by a violation of section 741 can enforce his or her rights only in accordance with the remedial provisions of section 740. *See id.* §§ 740(4)(d), 741(4). It therefore seems arguable that section 740's waiver cannot affect rights created by section 741 because the associated remedies are available under the same law, not "any other" law.

The logic of *Pipia* supports this reading. As discussed earlier, the court in *Pipia* dismissed claims related to an alleged retaliatory termination because they were waived by the institution of a section 740 action, even though the plaintiff withdrew the section 740 claim and replaced it with a section 741 claim. As an alternative ground for this disposition, the court stated that "dismissal of the [related] causes of action would have been required even if the plaintiff's [section 741 claim] had been pleaded initially." *Pipia*, 826 N.Y.S.2d at 320. According to the court, "[b]ecause a claim alleging a violation of Labor Law § 741(2) is enforced pursuant to Labor Law § 740(4)(d), the same waiver is

18

effected by the institution of a cause of action alleging a violation of Labor Law § 741(2)." *Id*. (citation omitted). Pursuant to this logic, because the waiver is triggered by "the institution of an action in accordance with this section" — namely, section 740 — a claim under section 741 is, by necessary implication, an action in accordance with section 740 as well.

### B. Does Section 741 Apply to Reddington?

The Hospital argues that even if Reddington did not waive her section 741 claim by instituting a claim under section 740, the district court correctly determined that Reddington failed to allege facts sufficient to support a claim that she was an employee — a person "who performs health care services for and under the control and direction of any public or private employer which provides health care services" — as defined in the health care whistleblower statute. N.Y. Lab. Law § 741(1)(a). Accordingly, the Hospital urges that her section 741 claim was properly dismissed.

Section 741 was enacted in 2002, and it is therefore not entirely surprising that we are unable to find any reported decisions discussing its definition of employee. We begin with the text of the statute, giving words of ordinary import in the statute their plain meaning. *See* N.Y. Stat. Law § 232 ("Words of ordinary import used in a statute are to be given their usual and commonly understood

19

meaning . . . ."); *id.* § 234 ("Dictionary definitions may be useful as guide posts in determining the sense with which a word was used in a statute . . . ."). In construing a New York law, we also look to legislative history in appropriate cases. *See id.* § 124 ("In ascertaining the purpose and applicability of a statute, it is proper to consider the legislative history of the act . . . .").

However, these sources provide no easily discernable answer in this case. It is not plain on the face of the statute whether health care services may include services beyond the provision of medical treatment. The legislative history may suggest so. *See, e.g.*, N.Y. Legis. Serv. Governor's Bill Jacket, 2003 A.B. 8017, ch. 505, at 3 ("Like other health care workers, pharmacists often encounter situations in which a regulation is ignored because of expediency[, which] jeopardize[s] patient safety."). The term "health care services" might be read to encompass, for example, a hospital's pharmacist, who would likely learn if a doctor at the hospital was illegally prescribing medication, or even a hospital's insurance claims processor. But the legislative history does not clearly indicate whether the definition extends to someone like Reddington whose job description includes functions such as: (1) "[c]oordinat[ing] and develop[ing] with Chief Medical Officer and appropriate medical personnel[] services to be offered to international patients"; (2) "[d]istribut[ing], collect[ing,] and analyz[ing] patient satisfaction questionnaires"; and (3) "[m]anag[ing] and train[ing] personnel

20

providing translation services."  Neither do we find controlling guidance in other New York statutes that define "health care services" with greater precision, *see, e.g.*, N.Y. Ins. Law § 4900(e)(2); N.Y. Pub. Health Law § 4900(5)(b); N.Y. Soc. Serv. Law § 369-ee(1)(e), for we interpret statutory terms equivalently only when the statutes refer to the same subject matter and have the same objectives, *see* N.Y. Stat. Law § 221; *Bridgestone/Firestone, Inc. v. Hartnett*, 572 N.Y.S.2d 770, 773 (App. Div. 1991), which these statutes do not.

## C.  Certification

Pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.27, "we may certify a question to the Court of Appeals when a question of New York law is 'determinative' of a claim before us and 'no controlling precedent of the Court of Appeals' resolves the question." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007) (quoting N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27).  In deciding whether to certify, we consider "three main issues: (1) 'the absence of authoritative state court interpretations of the state statute'; (2) 'the importance of the issue to the state' and whether the question implicates issues of state public policy; and (3) 'the capacity of certification to resolve the litigation.'" *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 531 (2d Cir. 2006) (citations omitted) (quoting *Green v.*

21

*Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000)).

Our analysis leads us to conclude that the issues in this case regarding the scope of section 740's waiver provision and the meaning of health care services in section 741 are appropriate for certification to the New York Court of Appeals. First, section 741 has never been discussed, or even mentioned in passing, by the Court of Appeals. Moreover, as we have recounted above, there is a split of authority — between the lower New York state courts on the one hand and at least some federal district courts in New York on the other — on the scope of section 740's waiver, which makes certification particularly appropriate. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997) (certification is appropriate when "there is a split of authority on the issue" (quoting *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir. 1992))); *id.* at 157-58 (Calabresi, J., dissenting) (certification is appropriate when the split of authority lies along federal/state lines because such a split would "lead[] to precisely the kind of forum shopping that *Erie R.R. Co. v. Tompkins* was intended to prevent" (citation omitted)). Second, laws applicable to health care workers, however defined, are of great importance to the public policy of New York,[1] and the question how to interpret essential procedural and substantive provisions of

---

[1] "In 2004, the health care sector (public and private) in New York employed more than 1,000,000, and paid out almost $43 billion in wages . . . ." Kevin Jack, *Health Care Engine Drives New York State*, Emp. in N.Y. St. (N.Y. State Dep't of Labor, Albany, N.Y.), Jan. 2006, at 1, 1, *available at* http://www.labor.state.ny.us/workforceindustrydata/PDFs/enys0106.pdf.

section 741 is likely to recur. Finally, a decision from the New York Court of Appeals will resolve the section 741 claim at issue in this case. Because all three factors favor certification, we conclude that it is appropriate to certify the following two questions to the New York Court of Appeals:

(1)   Does the institution of a time-barred claim pursuant to New York Labor Law § 740 simultaneously with a claim pursuant to New York Labor Law § 741 trigger section 740(7)'s waiver provision and thereby bar the section 741 claim, even if the section 740 claim is subsequently withdrawn?

(2)   Does the definition of employee in New York Labor Law § 741 encompass an individual who does not render medical treatment, and under what circumstances?

The New York Court of Appeals may, of course, reformulate these questions as it sees fit so as to better guide this court and others relying on its work. We reiterate, as we have in the past, *see, e.g.*, *O'Mara*, 485 F.3d at 699, our appreciation for the Court of Appeals's guidance on these matters of state law.

23

## III. Breach of Contract

Reddington also claims that she had a contractual right to return to her former position as Manager of Volunteer Services if her tenure with the International Visiting Patient Program did not work out. The Hospital argues that this claim is within the scope of section 740(7)'s waiver provision. We decline to decide whether Reddington waived her breach of contract claim because we agree with the district court's conclusion that Reddington does not sufficiently allege an employment contract of definite duration. We therefore affirm the district court's ruling dismissing Reddington's breach of contract claim.

Under New York law, "employment for an indefinite or unspecified term" is presumed to be "at will and . . . freely termina[ble] by either party at any time without cause or notice." *Horn v. N.Y. Times*, 790 N.E.2d 753, 755 (N.Y. 2003); *see also id*. at 759 ("We have consistently declined . . . to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts . . . ."). This presumption does not apply, however, when the employer and the employee are parties to an "agreement establishing a fixed duration." *De Petris v. Union Settlement Ass'n*, 657 N.E.2d 269, 271 (N.Y. 1995).

An agreement can establish a fixed duration even if its duration cannot be

determined ab initio, *see Rooney v. Tyson*, 697 N.E.2d 571, 575 (N.Y. 1998) ("New York's jurisprudence is . . . not so rigid as to require that a definite duration can be found only in a determinable calendar date."), *answering questions certified by* 127 F.3d 295 (2d Cir. 1997), as long as the duration "is delimited by legally and realistically cognizable boundaries." *Id.* at 574. For example, an offer of "permanent" employment does not specify a definite period, but employment for "life" does. *See id.* (citing *Arentz v. Morse Dry Dock & Repair Co.*, 164 N.E. 342, 344 (N.Y. 1928)). In *Rooney*, for example, the court held that the plaintiff, who was promised that he would be employed as a trainer for the boxer Mike Tyson "'for as long as [Tyson] fights professionally,'" had an employment contract of definite duration because "the durational term was understandable . . . and reasonably determinable." *Id.* at 575, 576.

Relying principally on *Rooney*, Reddington argues that Passeri's and Ferreri's statements to her created an expectation of employment for a definite duration and that the Hospital breached its contract with her by failing to allow her to resume her former job as Manager of Volunteer Services when it terminated her from the position of Director of the International Visiting Patient Program. Specifically, Reddington alleges that: (1) Passeri "assured [her] that her former position as Manager of Volunteer Services would always be available to her" (Am. Compl. ¶ 43); and (2) Ferreri "reiterated Mr. Passeri's assurances

25

that [Reddington] would always be able to return to her former position" (Am. Compl. ¶ 44).

These statements do not give rise to an understandable and reasonably cognizable duration of employment so as to overcome New York law's presumption of employment at will. *See Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001). Rather, by promising that Reddington's old job would "always" be available, these assurances are akin to an offer of "permanent" employment, which New York law does not recognize to specify a definite period. Whatever the precise limits of the doctrine enunciated in *Rooney*, the statements made to Reddington clearly lie outside of them. *See Arentz*, 164 N.E. at 344 ("An agreement to give a person permanent employment means nothing more than that the employment is to continue indefinitely and until one or the other of the parties wishes for some good reason to sever the relation."). Reddington has not alleged sufficient facts to suggest that she was not an at-will employee, and therefore she has not adequately alleged that the Hospital breached an employment contract by terminating her. We accordingly affirm the district court's dismissal of her contract claim.

## IV. Cross-Appeal

New York's Whistleblower Law authorizes "[a] court, in its discretion, [to]

order that reasonable attorneys' fees and court costs and disbursements be awarded to an employer if the court determines that an action brought by an employee under this section was without basis in law or in fact." N.Y. Lab. Law § 740(6). New York courts have awarded attorneys fees under this provision after finding "not only that there is no merit in the claim and that it should be dismissed as a matter of law, but also that it lacks even any arguable merit and that such lack of merit should have been apparent at the commencement of the action." *Rotwein v. Sunharbor Manor Residential Health Care Facility*, 695 N.Y.S.2d 477, 482 (Sup. Ct. 1999). Whether Reddington's action was, at its commencement, without basis in law or fact will depend at least partially on how the certified questions are resolved. We therefore retain jurisdiction to consider the Hospital's cross-appeal.

## CONCLUSION

We conclude that unresolved, important, and determinative issues of New York law are central to this case, and certification to the New York Court of Appeals is therefore appropriate. Accordingly, the judgment of the district court is AFFIRMED in part, and two questions are CERTIFIED to the New York Court of Appeals.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk

27

of the New York Court of Appeals a Certificate in the form set forth above, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to consider all issues that remain on appeal once the New York Court of Appeals has either provided us with its guidance or declined certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.