12-2955-cv
*Brown v. Daikin America Inc.*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: March 5, 2013    Decided:  June 27, 2014)

Docket No. 12-2955-cv

TODD BROWN,

*Plaintiff-Appellant,*

–v.–

DAIKIN AMERICA INC., DAIKIN INDUSTRIES LTD.,

*Defendants-Appellees.*

B e f o r e:

LYNCH, LOHIER, and CARNEY, *Circuit Judges.*

Appeal from a final judgment of the United States District Court for the Southern District of New York (Seibel, *J.*) dismissing plaintiff Todd Brown's original Complaint against defendant Daikin Industries Ltd. ("DIL") and Brown's Amended Complaint against defendant Daikin America Inc. ("Daikin

America") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Brown, a white male of United States national origin, alleges that DIL and Daikin America (DIL's wholly-owned subsidiary) discriminated against him on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, when they terminated his employment as a part of a workforce reduction at Daikin America.  Brown claims that Daikin America, acting at DIL's direction, wrongfully failed to consider for termination those employees of Japanese national origin who previously worked for DIL and would likely return to DIL in the future.  We conclude that Brown has sufficiently alleged that DIL and Daikin America are a "single integrated enterprise" for purposes of Title VII and the NYSHRL, and that Brown has stated a plausible discrimination claim against both entities as his employer.  We therefore VACATE the District Court's judgment dismissing those claims and REMAND for further proceedings consistent with this opinion.  Because Brown has not alleged, however, the existence of an express written policy limiting Daikin America or DIL's authority to terminate his employment without cause, Brown failed to state a claim for breach of implied contract.  We therefore AFFIRM the District Court's judgment as to that claim.

AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.

---

PHILIP P. KALODNER, ESQ., Gladwyne, Pennsylvania, *for Plaintiff-Appellant*.

JEROME P. COLEMAN (Adriana S. Kosovych, *on the brief*), Putney, Twombly, Hall & Hirson LLP, New York, New York, *for Defendants-Appellees.*

---

SUSAN L. CARNEY, *Circuit Judge*:

This case involves claims of race and national origin discrimination arising from the termination of an individual's employment with the New York-based wholly-owned subsidiary of a Japanese corporation. The District Court dismissed the actions against the corporate parent and subsidiary for failure to state a claim. We conclude that, under the standards articulated in *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995), the plaintiff, Todd Brown, sufficiently alleged that the corporate parent was part of a "single integrated enterprise" with its American subsidiary to be properly named as a co-defendant in a discriminatory discharge suit under Title VII and the New York State Human Rights Law. We also conclude that Brown plausibly alleged a claim of race or national origin discrimination against both the corporate parent and the subsidiary. On these counts, we VACATE the judgment of the District Court and REMAND for further proceedings consistent with this decision.

We agree with the District Court, however, that Brown's claim for breach of contract does not survive defendants' motions to dismiss because he failed to allege that either defendant maintained a written policy of terminating

3

employees only for cause. Accordingly, we AFFIRM the judgment of the District Court dismissing Brown's contract claim.

## BACKGROUND

We recite the facts as alleged in Brown's Complaint and Amended Complaint, noting any relevant differences.[1] We accept these facts as true for purposes of reviewing the District Court's grant of defendants' motions to dismiss. *See Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*, 711 F.3d 68, 74 (2d Cir. 2013).

Brown — who is white and of United States national origin — is a former employee of Daikin America, Inc. ("Daikin America"), a Delaware corporation that is headquartered in Rockland County, New York, and engaged in the manufacture and sale of chemical products. Daikin America is a wholly-owned subsidiary of Daikin Industries Ltd. ("DIL"), a Japanese corporation based in

---

[1] After the District Court dismissed with prejudice Brown's claims against DIL, Brown filed an Amended Complaint that included claims against only Daikin America. For purposes of evaluating the claims against DIL, we consider the allegations as pled in the initial Complaint. *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("We see no reason to require repleading of a claim or defense that explicitly has been denied."). In evaluating Brown's claims against Daikin America, we consider the allegations pled in the Amended Complaint along with those allegations from the original Complaint specifically incorporated by the District Court as a result of its finding that Brown manipulated some of the allegations in response to Daikin America's motion to dismiss.

4

Osaka, Japan.[2]  Brown worked in Daikin America's New Business Development

Group ("the Group") from approximately 2001 until 2009, when he was

discharged as part of a company-wide reduction in force.  During his time at

Daikin America, Brown's performance reviews were consistently positive.

Brown is fluent in Japanese and familiar with Japanese business culture.  Before

beginning work at Daikin America, he worked for a Japanese company for six

years, during which he spent two years living and working in Japan.

In February 2009, when Brown's employment with Daikin America ended,

the Group consisted of six employees, three of whom were white Americans, and

three of whom were Japanese citizens of Japanese national origin.  Each of the

Japanese employees in the Group previously worked for DIL in Japan, but was

assigned to Daikin America "to act as [Daikin America's] employee[ ]" while in

the United States.  Complaint ("Compl.") ¶¶ 8, 21.  Such inter-company

"rotational" assignments lasted a period of years.[3]  As a result of the 2009

---

[2] DIL owns Daikin Holdings (USA), Inc., which in turn owns Daikin America.

[3] As noted by the District Court, the Amended Complaint does not contain an allegation to this effect.  Brown concedes, however, for purposes of this appeal, that we may read both the Complaint and the Amended Complaint as alleging the existence of a rotational system in

workforce reduction, the employment of Brown and one other white American in the Group was terminated. The remaining white American employee was transferred out of the Group, leaving three Japanese citizens employed in the Group.[4] During the same reduction effort, Daikin America also terminated employees in three other business groups. In total, seven American employees (six of whom were white and one of whom was black) lost their jobs in the workforce reduction, but no Japanese employees were terminated.

Brown alleges that, for discriminatory reasons, Daikin America did not consider terminating any of the Japanese rotational employees or any employees of Japanese national origin who had been hired directly by Daikin America.[5] Brown further alleges that DIL and Daikin America maintained a policy of

---

which Japanese employees who had previously worked for DIL came to the United States to work for Daikin America, with the expectation that the employees would later return to DIL.

[4] The other American in the Group who lost his job was Frank Plahutnik, Jr. As we discuss below, Plahutnik also sued Daikin America under Title VII to protest his discharge. Plahutnik's case was assigned to Judge Seibel, as a case related to Brown's action. *See Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96 (S.D.N.Y. 2012).

[5] Although the original Complaint alleges that Daikin America did not consider terminating the rotational Japanese employees because only DIL had the power to reassign or discharge them, the Amended Complaint charges more summarily that discriminatory reasons lay behind Daikin America's failure to consider Japanese employees for termination. *See infra* pp. 8-9.

terminating employees only for cause, and that he accepted and remained at his job at Daikin America in part because of this policy.

After exhausting his administrative remedies with the Equal Employment Opportunity Commission, Brown filed a complaint against DIL and Daikin America in June 2010. In it, Brown contended that DIL and Daikin America violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, by discriminating against him on the basis of his race or national origin. In particular, he alleged that defendants terminated his employment without considering similar action against Japanese employees. He also alleged, in a separate count, that defendants violated an implied term of his employment contract — that he would be terminated only for cause.

Daikin America filed an answer to Brown's Complaint and DIL moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The District Court granted DIL's motion to dismiss, reasoning that DIL was not part of a "single integrated enterprise" with Daikin America for purposes of determining what entity or entities were Brown's "employer" under Title VII and the NYSHRL.

The District Court ruled further that Brown did not plausibly allege that DIL had any input into the decision to terminate his employment. *Brown v. Daikin Am., Inc.*, No. 10 Civ. 4688 (CS), 2011 WL 10842873, at *5-8 (S.D.N.Y. Aug. 19, 2011). The court observed that even if DIL had some control over the decision to terminate, the Complaint's allegations supported only "the mere possibility of misconduct" by DIL, rather than stating a plausible claim of discrimination: the preferential treatment of Japanese employees was just as likely to have been based on their rotational status as their national origin. *Id.* at *10 (internal quotation marks omitted). Finally, the District Court dismissed Brown's breach of contract claim because the Complaint did not allege that DIL had violated a written policy limiting its right to discharge its employees. *Id.*

With the District Court's leave, Brown filed an Amended Complaint naming Daikin America as the sole defendant. The Amended Complaint remained in all but one material respect the same as the original Complaint: its factual narrative omitted any reference to the rotational status of the Japanese employees.

Daikin America moved to dismiss the Amended Complaint, and the District Court granted the motion in a bench opinion issued on June 22, 2012. Disapproving as "manipulative" Brown's omission from the Amended Complaint of his earlier allegations about the employee rotational program, the District Court chose to include those allegations in its analysis of the Amended Complaint for purposes of deciding the motion to dismiss. In light of these allegations, the District Court ruled that Brown had not plausibly alleged that his discharge occurred under circumstances giving rise to an inference of discrimination. The court explained that Brown was not similarly situated to the Japanese employees assigned to work at Daikin America because, unlike those colleagues, he was not a rotational employee. Because Brown had failed to allege that he was treated differently than Japanese employees who *were* similarly situated, he had failed to state claims cognizable under Title VII and the NYSHRL. The District Court dismissed Brown's breach of contract claim against Daikin America for the same reasons that it gave in support of its earlier dismissal of the parallel claim against DIL.

Brown now timely appeals from the judgment entered after dismissal with prejudice of both complaints.[6]

## DISCUSSION

We review *de novo* the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007). A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[6] Brown subsequently filed a Rule 60(b) motion in the District Court, seeking reconsideration of the language in the court's June 22, 2012 bench opinion, which Brown contends "unfairly accus[ed] him of having done a 'bait and switch[,]' of 'having blatantly changed his statement of the facts' and of setting forth 'manipulated allegations' in his Amended Complaint." Brown did not seek reconsideration, however, of the court's ruling that the Amended Complaint failed to state a claim. The District Court denied Brown's Rule 60(b) motion by order dated July 18, 2012.

By letter dated December 13, 2012, Brown requested leave to file a second Rule 60(b) motion, arguing that the District Court had filed a "directly contrary and inconsistent decision" in the case brought by Brown's colleague, Plahutnik. In an order dated February 28, 2013, the District Court responded that it would "entertain the motion if the case is remanded to [it]," as the motion "raises a substantial issue."

10

statements, do not suffice," *id.*, and we "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

## I.     Title VII and NYSHRL Claims

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."  42 U.S.C. § 2000e-2(a)(1).  The NYSHRL mirrors these federal obligations.[7]

Brown's claims against DIL turn at the threshold, however, on whether DIL may be held liable as an "employer" under the relevant provisions of Title VII and the NYSHRL.  Accordingly, we turn first to this question, which we answer in the affirmative.  We then address whether, in the Complaint and Amended Complaint considered together, Brown has stated a plausible claim of discrimination against DIL and Daikin America.

---

[7] "[B]ecause New York courts rely on federal law when determining claims under the New York [State] Human Rights Law," we analyze these claims in tandem.  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996)).

11

## A.     DIL's liability as Brown's "employer"

"[T]he existence of an employer-employee relationship is a primary element of [a] Title VII claim[ ]."  *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006); *see also* 42 U.S.C. § 2000e(b) (defining an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees," as well as "any agent of such a person").  An employer-employee relationship is also required to sustain analogous claims under the NYSHRL.  *See Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000).  Although Brown acknowledges that Daikin America — not DIL — is his direct employer, he contends that DIL also should be considered his employer for purposes of Title VII and NYSHRL liability because DIL and Daikin America constitute a "single integrated enterprise."  Appellant's Br. at 34.  We agree.

"To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000).  In essence, a court must consider whether "an employee, formally

12

employed by one entity, . . . has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity." *Arculeo v. On-Site Sales & Mktg., L.L.C.*, 425 F.3d 193, 198 (2d Cir. 2005). Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss. *See, e.g.*, *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999); *Salemi v. Boccador, Inc.*, No. 02 Civ. 06648 (GEL), 2004 WL 943869, at *4 (S.D.N.Y. Apr. 29, 2004).

In *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995), we adopted a four-part "single-employer" test to determine when, for Title VII purposes, a parent company such as DIL may be considered the employer of its subsidiary's employees. *Id.* at 1241. Under this test, "[a] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at 1240 (quoting *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir. 1994)). "Although no one factor is determinative . . . control of labor

13

relations is the central concern." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (citations omitted).

Here, the District Court ruled that Brown sufficiently alleged that DIL and Daikin America maintained interrelated operations and were under common ownership.[8] The court nonetheless held that Brown failed adequately to allege that the two entities constituted a single integrated enterprise because he did not plausibly allege centralized control of labor relations and common management. Accepting Brown's well-pled allegations as true, we conclude that the District Court erred in this respect.

To satisfy the single-employer test, a plaintiff need not allege that the parent exercises "total control or ultimate authority over hiring decisions," so long as he alleges that there is "an amount of participation [by the parent] that is

---

[8] In finding Brown's allegation of interrelated operations to be sufficient, the District Court relied on the Complaint's allegations that "DIL closely directed the operations of . . . [Daikin America] and its employees, . . . the approval of DIL was required as to all significant actions by [Daikin America] and its employees," and DIL "closely supervised" Daikin America's New Business Development Group "by e-mail, by telephone conference calls, in visits to [Daikin America] by DIL executives and in required visits by [Daikin America] employees . . . to DIL in Japan." *Brown*, 2011 WL 10842873, at *6 (quoting Compl. ¶¶ 5, 8-9, 12). The court further explained that "the very system of assigning employees from one company to work for a period of years at another company suggests a significant degree of interrelated operations." *Id.* Finally, the District Court found that "there is no dispute as to common ownership, because both Plaintiff and Defendants acknowledge that [Daikin America] is wholly owned by DIL." *Id.* at *7. We agree with the District Court's assessment of these two factors.

14

sufficient and necessary to the total employment process." *Cook*, 69 F.3d at 1241 (internal quotation marks omitted). In determining whether a plaintiff adequately alleges centralized control over labor relations — the most important prong in the four-part test — the central question is "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* at 1240 (citations omitted). For example, in *Cook* our Court found that a parent corporation had the requisite degree of control over labor relations to be held liable along with its subsidiary as the plaintiff's employer where (a) the parent processed applications for employment for the subsidiary and approved personnel status reports; (b) the subsidiary "cleared all major employment decisions" with the parent; and (c) the plaintiff was hired and fired by employees of the parent. *Id.* at 1241.

Similarly, in *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000) (Sotomayor, *J.*), we found a genuine issue of material fact regarding whether two entities constituted an integrated enterprise sufficient to hold both liable as the plaintiff's employer under the NYSHRL and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* There, the plaintiff filed disability

15

discrimination claims against his former employer, Sony Pictures Entertainment, Inc. ("SPE") — a subsidiary of the parent corporation — and SPE's sibling company, Columbia Pictures Industries, Inc. ("CPI"), which was also a subsidiary of the parent.  To support his claim that the two siblings comprised an "integrated enterprise," the plaintiff produced "numerous documents, including disability forms and payroll authorizations," listing CPI as his employer.  *Id.* at 341.  Although the record contained evidence reflecting that the siblings maintained separate human resources departments, the plaintiff also produced pay stubs that showed his earnings as being "paid on behalf of Columbia Pictures Industries" through "SPE Corporate Services, Inc."  *Id.* (internal quotation marks omitted).  Citing *Cook*, we held that, under the circumstances, "a reasonable jury could conclude that CPI exercised sufficient control over the terms and conditions of [plaintiff's] employment to qualify as his 'employer' for purposes of a discrimination claim."[9]  *Id*.

---

[9] Although *Parker* involved sibling corporations, its reasoning applies equally to cases involving a parent and subsidiary.  *See Arculeo*, 425 F.3d at 198 (explaining that "[a] single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise," and that examples of this situation include "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management" (internal quotation marks omitted)).

Here, Brown alleged that DIL "closely directed the operations of its wholly owned subsidiary, Daikin America" and that DIL's approval "was required as to all significant actions by Daikin America." Compl. ¶ 5. Brown charged that DIL "immuniz[ed]" Japanese rotational employees from discharge by directing Daikin America to discharge only employees who were not Japanese, *id.* ¶ 39, and by prohibiting Daikin America from reassigning or discharging Japanese rotational employees, *id.* ¶ 25. Taken together, these allegations sufficiently suggest that DIL exercised centralized control over Daikin America's decisions about which employees to terminate in the course of the workforce reduction, and that DIL, by protecting Japanese employees from discharge, effectively ensured that employees of other races or national origins, like Brown, would be terminated.

We recognize that Brown does not plead facts suggesting that DIL had significant responsibility for other aspects of Daikin America's labor relations. *Cf. Cook*, 69 F.3d at 1241. For instance, Brown does not allege that DIL participated in the decision to hire him or expressly directed Daikin to end his employment. Nor, for that matter, does he allege common management.

17

Nonetheless, at this early stage in the litigation, the control that Brown alleged DIL to have exercised over Daikin America's employment actions — lying at the core of Brown's charges of discrimination — is adequate to sustain the action against DIL.

Because Brown has pleaded facts that, if true, demonstrate that Daikin America and DIL conducted interrelated operations, had common ownership, and were subject to centralized control of labor relations, we conclude that he has plausibly alleged that DIL and Daikin America both were his employer for purposes of his Title VII and NYSHRL claims.

B. **Plausible claim of race or national origin discrimination**

We next address defendants' contention that Brown has failed to state a claim of race or national origin discrimination. It has been suggested that whether a Title VII plaintiff must plead a prima facie case under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive a motion to dismiss, or whether the plaintiff must simply allege facts sufficient to raise a right to relief above the speculative level, is not an entirely settled

question in our Circuit.[10]  We are skeptical of these suggestions because the

Supreme Court held in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), that a

that a plaintiff need not plead facts establishing a prima facie case under

*McDonnell Douglas* to survive a motion to dismiss, *id.* at 515, and went out of its

way in *Twombly* to reaffirm that holding, 550 U.S. 544, 569-70.  Nevertheless, we

need not undertake to resolve the question here because Brown's discrimination

claim is sufficient under either standard:  it is facially plausible, gives defendants

---

[10] Before its decisions in *Twombly* and *Iqbal*, the Supreme Court held that Title VII plaintiffs need not plead facts establishing a prima facie case of discrimination under *McDonnell Douglas* because "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508, 511 (2002).  When *Swierkiewicz* was decided, however, the adequacy of pleadings was governed by the "no-set-of-facts" test articulated in *Conley v. Gibson*, 355 U.S. 41 (1957) — a test that was "retired" by *Twombly* and *Iqbal*.  *Iqbal*, 556 U.S. at 670.  The Supreme Court nevertheless reaffirmed *Swierkiewicz* in *Twombly*, explaining that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized . . . [that] a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements."  550 U.S. at 569-70.

Although this Court has not addressed the issue in a published opinion since *Iqbal*, we have applied *Swierkiewicz* in a summary order.  *See Chepak v. Metro. Hosp.*, -- F. App'x --, 2014 WL 552682, at *1 (2d Cir. Feb. 13, 2014) (explaining that a Title VII complaint "need not allege specific facts establishing a prima facie case of discrimination under *McDonnell Douglas* . . . . At the pleading stage, we consider only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level'" (citations omitted)).  Courts in our Circuit have reconciled *Swierkiewicz*, *Twombly*, and *Iqbal* by concluding that, to survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim; it need not, however, make out a prima facie case.  *See Mohawk v. William Floyd Sch. Dist.*, No. 13 Civ. 2518 (JS) (GRB), 2014 WL 838162, at *2 (E.D.N.Y. Mar. 3, 2014) (collecting cases).  Nonetheless, some courts have questioned the continuing vitality of *Swierkiewicz*.  *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

19

fair notice of the basis for his claim, and alleges facts sufficient to establish a prima facie case under *McDonnell Douglas*.

To state a prima facie case of discriminatory discharge under Title VII, a plaintiff must allege that: (1) he falls within a protected group; (2) he held a position for which he was qualified; (3) he was discharged; and (4) "the discharge occurred under circumstances giving rise to an inference of discrimination." *Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir. 2001) (internal quotation marks omitted). A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that he was treated less favorably than similarly situated employees of other races or national origins. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Here, defendants do not dispute that Brown adequately alleged the following: that he is a member of a protected class, was qualified to hold his job, and suffered an adverse employment action when defendants terminated his employment. Instead, defendants argue that Brown's allegations do not support an inference of discrimination because the Japanese rotational employees at Daikin America were not "similarly situated" to Brown and the other American

20

employees.  Therefore, defendants argue, the companies had no duty to consider the Japanese employees for termination as part of the workforce reduction, and Brown has not provided a basis for inferring that his termination was discriminatory.  We are not persuaded.

To establish an inference of discrimination, a plaintiff must allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (internal quotation marks omitted).  What will constitute "all material respects" will vary from case to case, of course.  We have said that the judgment rests on "whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards."  *Id.* at 40.  The plaintiff's and comparator's circumstances must bear a "reasonably close resemblance," but need not be "identical."  *Id.*  Ordinarily, "[w]hether two employees are similarly situated . . . presents a question of fact," rather than a legal question to be resolved on a motion to dismiss.  *Id.* at 39.

Defendants first argue that the Japanese employees were not similarly situated to Brown because they were employed by DIL, and Brown was employed by Daikin America.  As we have said above, however, for purposes of

21

the workforce reduction, DIL and Daikin America constituted a single integrated enterprise. Therefore, Brown has adequately alleged that he and the Japanese employees had a common employer. *See* Compl. ¶ 8 (alleging that the Japanese rotational employees were assigned "for a period of years to Daikin America to act as *its* employees" (emphasis added)); Am. Compl. ¶ 21 (alleging that Daikin America "did not terminate any of *its* employees of the Japanese race and/or of Japanese national origin" (emphasis added)).

Defendants next argue that Brown failed to allege plausibly that he and the Japanese employees were similarly situated because he did not plead any facts about the Japanese employees' "job function, experience, qualifications, [or] rate of pay." Appellees' Br. at 20. Employees may be similarly situated, however, if they are "subject to the same standards governing performance evaluation and discipline." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) (internal quotation marks omitted). Here, Brown alleges that he worked in the New Business Development Group with three Japanese employees, two of whom reported to the same supervisor as he did. Drawing all reasonable inferences in Brown's favor, as we must, both Brown and the Japanese

employees in the Group are plausibly alleged to be subject to the same performance evaluation and disciplinary standards, and therefore similarly situated in their employment circumstances.[11]

Finally, defendants argue that even if Brown was similarly situated to the Japanese employees, he fails to state a claim because there were other plausible, non-discriminatory reasons for the allegedly disparate treatment. This argument — in some ways a repackaging of defendants' first argument — also fails. That there may be other explanations for the defendants' employment decisions does not render Brown's allegations of discrimination inadequate as a matter of law. Whether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions — a question as to which the defendants bear the burden of production, *see McDonnell Douglas*, 411 U.S. at 802-03 — is not properly decided on a motion to dismiss for failure to state a claim. *Cf. Plahutnik,* 912 F. Supp. 2d at 105 (denying Daikin America's motion for summary judgment because "that Japanese rotational employees were not considered for downsizing

---

[11] The District Court further concluded that Brown's allegations in this respect fell short because Brown conceded in his Complaint that employment and termination decisions for the assigned Japanese employees could be made only by DIL. *Brown*, 2011 WL 10842873, at *9; *see also* Compl. ¶ 25. Yet because we hold that DIL and Daikin America constitute a single employer for purposes of Brown's discrimination claims, this concession is irrelevant.

is enough to meet Plaintiff's *de minimis* burden . . . of raising an inference of discrimination").[12]

We conclude, therefore, that Brown has stated a plausible claim of discrimination against both DIL and Daikin America. Accordingly, we vacate the District Court's dismissal of Brown's Title VII claim against DIL and Daikin America, and remand for proceedings consistent with this opinion. For the same reasons, we also vacate and remand the District Court's dismissal of Brown's NYSHRL claim against both defendants.

## II.     Breach of Implied Contract

Finally, we briefly address Brown's claim that Daikin America and DIL breached an implied term of his employment contract by terminating his employment without cause. In this regard, Brown alleges that it was the policy of both Daikin America and DIL not to terminate employees for economic

---

[12] The plaintiff in *Plahutnik* was the other non-Japanese American in the Group whose employment was terminated at the same time as Brown's. 912 F. Supp. 2d at 98. In denying Daikin America's motion for summary judgment in that case, the District Court concluded that Plahutnik had raised a genuine issue of material fact as to whether Daikin America had discriminated against him by failing to consider Japanese rotational employees for termination. *Id.* at 105. Brown's factual allegations are materially identical to the allegations of Plahutnik, and yet the District Court ruled that Plahutnik was able to survive summary judgment on this issue, while Brown's complaints required dismissal for failure to state a claim. As the District Court appeared to recognize, *see supra* note 6, these decisions are difficult to reconcile.

reasons, but only "for cause," and that he accepted and remained at his job in part in reliance on this policy.

Under New York law, "'employment for an indefinite or unspecified term' is presumed to be 'at will and . . . freely termina[ble] by either party at any time without cause or notice.'" *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 137 (2d Cir. 2007) (quoting *Horn v. N.Y. Times Co.*, 100 N.Y.2d 85, 91 (2003)) (alterations in original). An employee may rebut the presumption of at-will employment, however, by demonstrating an "express limitation in the individual contract of employment curtailing an employer's right to terminate at will." *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (internal quotation marks omitted). As we have observed, "[t]he New York Court of Appeals has admonished that this is a 'difficult pleading burden' and that '[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements.'" *Id.* (internal citations, footnote, and alteration omitted).

Here, we see no basis for concluding that the employment relationship between Brown and defendants was anything other than at will. Brown's

25

employment was not governed by a written contract. Brown did not allege that Daikin America or DIL had an express written policy limiting their rights to discharge employees. Rather, Brown asserts merely that he was "reassured on several occasions by his superiors that the policy of Daikin America and DIL was not to terminate on the basis of . . . financial difficulties, and that he should not fear termination on such basis." Compl. ¶ 19; *see also* Am. Compl. ¶ 16. This allegation is insufficient to establish an implied contract that supervenes New York's presumption of at-will employment.

Accordingly, the District Court properly dismissed his breach of contract claim for failure to state a claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's dismissal of Brown's breach of contract claim, VACATE the District Court's judgment dismissing Brown's Title VII and NYSHRL claims, and REMAND for further proceedings consistent with this opinion.