*89 OPINION OF THE COURT
Read, J.
At issue in this appeal is whether the narrow exception to the at-will employment doctrine adopted in Wieder v Skala (80 NY2d 628 [1992]) encompasses a physician employed by a nonmedical employer. For the reasons that follow, we conclude that it does not and decline to expand the Wieder exception to do so. Accordingly, we reverse.
I.
In her complaint, Sheila E. Horn, D.O., formerly the Associate Medical Director of the Medical Department of the New York Times, alleges that her “primary responsibilities” in this position “were to provide medical care, treatment and advice to employees of the Times. Among other things, * * * determining if injuries suffered by Times employees were work-related, thus making the employees eligible for Worker’s Compensation payments.” She worked at the Times’ main building in midtown Manhattan, along with the Medical Director, a physician’s assistant, two nurses and three professional social workers.
According to Horn, on “frequent occasions” personnel in the Times’ Labor Relations, Legal and Human Resources Departments directed her to provide them with confidential medical records of employees without the employees’ consent or knowledge. She also claims that personnel in the Times’ Human Resources Department instructed her to misinform employees whether their injuries and illnesses were work-related so as to curtail the number of workers’ compensation claims filed against the newspaper.
Horn “consulted with the New York State Department of Health and other authorities” about “the propriety and legality” of these directives. The Department of Health supposedly advised her that “if a physician releases patient information and/or medical records without the consent of the patient, except under certain, narrowly-defined circumstances, that physician is violating several provisions of state law, the Code of Ethical Conduct of the American College of Occupational and Environmental Medicine, the Americans With Disabilities Act, and various federal regulations.” Accordingly, Horn *90 disregarded her employer’s orders and refused to share patient information or records with nonmedical Times personnel without patient consent or knowledge.
In April 1999, the Times decided to restructure its Medical Department, resulting in the “phasing] out” of the positions occupied by Horn and the Medical Director and physician’s assistant with whom she had worked, but not those of other professional personnel in the Medical Department. Horn contends that this restructuring and the Times’ outsourcing of certain medical services were mere pretexts; that the Times, in fact, undertook these actions in order to get rid of her because she was viewed as a troublemaker.
Horn contends that her contract of employment with the Times “implied the fundamental understanding, which requires no written expression, that the physician will conduct her practice on the employer’s behalf in accordance with the ethical standards of the medical profession” (emphasis added). She alleges that the Times terminated her employment because she resisted management’s entreaties to trench upon patient confidentiality in violation of unexpressed but commonly understood ethical standards, and seeks compensatory and punitive damages for breach of contract.
The Times made a preanswer motion to dismiss Horn’s complaint for failure to state a cause of action. Supreme Court denied the motion as to the first cause of action for breach of contract. Characterizing the issue presented as “whether the exception enunciated in Wieder v Skala (80 NY2d 628 [1992]) to New York’s rule relating to employment at will should be extended to a physician employed by a nonmedical entity,” Supreme Court concluded that it should (186 Misc 2d 469, 470 [2000]).[1] The Appellate Division affirmed, with two Justices dissenting (293 AD2d 1 [2002]), and subsequently certified the following question to this Court: “Was the order of [the Appellate Division], which affirmed the order of the Supreme Court, properly made?”
II.
The traditional American common-law rule undergirding employment relationships, which we adopted in Martin v New York Life Ins. Co. (148 NY 117 [1895]), is the presumption that *91 employment for an indefinite or unspecified term is at will and may be freely terminated by either party at any time without cause or notice. While the twentieth century featured significant statutory inroads into the presumption of at-will employment, most notably with passage of the National Labor Relations Act in 1935 and title VII of the Civil Rights Act of 1964, American courts have proved chary of creating common-law exceptions to the rule and reluctant to expand any exceptions once fashioned (see Summers, Employment at Will in the United States: The Divine Right of Employers, 3 U Pa J Lab & Emp L 65 [2000]). Our own jurisprudence reflects this pattern, as a brief examination of our major cases over the last 20 years illustrates.
In Weiner v McGraw-Hill, Inc. (57 NY2d 458 [1982]), plaintiff Weiner alleged that he was induced to leave his former employer for McGraw-Hill by assurances of job security. He claimed that he signed and submitted a McGraw form job application specifying that his employment was subject to McGraw’s handbook on personnel policies and procedures, which represented that McGraw would “resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed” (id. at 460); that he relied on these undertakings in good faith when he left his former employer to work for McGraw, thereby forfeiting accrued fringe benefits and foregoing a promised salary increase; that he routinely rejected other offers of employment to remain at McGraw because of these assurances; and that he was instructed by his supervisors to adhere strictly to the handbook’s procedures when considering the dismissal of subordinates. When Weiner was subsequently dismissed without just cause or an opportunity for rehabilitation, we found these cumulative factors sufficient to state a cause of action for breach of contract.
A scant four months later in Murphy v American Home Prods. Corp. (58 NY2d 293 [1983]), we considered whether a long-tenured corporate employee allegedly discharged in part[2] for reporting accounting improprieties to top management had stated a cause of action in tort for abusive discharge, or in contract for breach of an implied covenant of good faith and fair dealing. Plaintiff Murphy, an assistant treasurer in a corporation, urged us to recognize the tort of abusive or wrong *92 ful discharge of an at-will employee, pointing out that other jurisdictions had done so where employees were dismissed in retaliation for employee conduct protected by public policy.
Judge Jones, writing for the majority, emphatically turned down Murphy’s invitation, “being of the opinion that such a significant change in our law is best left to the Legislature,” which is well-situated “to discern the public will, to examine the variety of pertinent considerations, to elicit the views of the various segments of the community that would be directly affected and in any event critically interested, and to investigate and anticipate the impact of’ any major change in the at-will employment rule {id. at 301, 302). In short, if this rule were “to be tempered, it should be accomplished through a principled statutory scheme, adopted after opportunity for public ventilation, rather than in consequence of judicial resolution of the partisan arguments of individual adversarial litigants” (id. at 302).
Murphy further argued that the law implies a covenant of good faith and fair dealing in all contracts, including employment contracts of indefinite duration; that he was required to disclose accounting improprieties by virtue of his terms of employment; and therefore that his employer’s discharge of him for having done so constituted a breach of contract. Citing the venerable case of Wood v Duff-Gordon (222 NY 88 [1917]), Judge Jones acknowledged that New York recognizes an implied and enforceable obligation of good faith and fair dealing on the part of a party to a contract in appropriate circumstances; however,
“[i]n such instances the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship. * * * [U]nder New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer’s right at any time to terminate an employment at will remains unimpaired” (58 NY2d at 304-305 [emphasis added]).
We next visited at-will employment in Sabetay v Sterling Drug (69 NY2d 329 [1987]). Plaintiff Sabetay asserted that he was discharged on account of his refusal to participate in certain improper, unethical and illegal financial activities in *93 violation of contractual obligations derived from, the corporate personnel policy manual and the corporation’s accounting code. We reiterated that a covenant of good faith and fair dealing “can be implied only where the implied term is consistent with other mutually agreed upon terms in the contract” (id. at 335); and again observed that “significant alteration of employment relationships * * * is best left to the Legislature [citation omitted], because stability and predictability in contractual affairs is a highly desirable jurisprudential value” (id. at 336).
In Weiner, Murphy and Sabetay, we thus exhibited a strong disinclination to alter the traditional rule of at-will employment. It was in this context that we decided Wieder v Skala (80 NY2d 628 [1992]), the case upon which Horn pins her faith.
Plaintiff Wieder, an associate in a law firm, asked the firm to assign another associate to represent him in a real estate transaction. This associate neglected the project and then lied to Wieder in order to cover up his inattention. When Wieder asked the firm’s partners to report the associate’s misconduct to the Appellate Division’s Disciplinary Committee, as required by DR 1-103 (a) of New York’s Code of Professional Responsibility (22 NYCRR 1200.4), they balked. When the firm subsequently dismissed Wieder, he sued, claiming retaliatory discharge and breach of implied contract. Supreme Court dismissed his complaint on account of the employment-at-will doctrine (144 Misc 2d 346 [1989]) and the Appellate Division affirmed (167 AD2d 265 [1990]).
We rejected Wieder’s argument that “the dictates of public policy in DR 1-103 (A) have such force as to warrant * * * recognition of the tort of abusive discharge” (80 NY2d at 638-639). Moreover, we relied upon Murphy and Sabetay for the proposition that major alterations in employment relationships are best left to the Legislature, pointing out the Legislature’s enactment of the Whistleblower’s Law (Labor Law § 740; Civil Service Law § 75-b). Although we reinstated the cause of action for breach of contract, we were careful to limit the reach of the exception to the at-will employment doctrine thus created and to preserve Murphy and Sabetay.
Critically, we observed that the plaintiffs in Murphy and Sabetay, employees working in the financial departments of large companies, provided professional accounting services in furtherance of their corporate responsibilities. By contrast, Wieder’s provision of professional services to the firm’s clients *94 as a member of the bar “was at the very core and, indeed, the only purpose of his association with [the law firm] * * * [His] duties and responsibilities as a lawyer and as an associate of the firm [are] so closely linked as to be incapable of separation” (id. at 635 [emphasis added]).
We also considered the particular ethical rule at issue in Wieder to be indispensable to the unique function of attorney self-regulation, a judgment that we are best situated to make since the regulation of lawyers in New York has been delegated by the Legislature to the Judiciary (see Judiciary Law § 90 [2]; see also People ex rel. Karlin v Culkin, 248 NY 465, 480 [1928] [“If the house is to be cleaned, it is for those who occupy and govern it, rather than for strangers, to do the noisome work”]). Further, Wieder’s failure to comply with DR 1-103 (a) put him at risk of suspension or disbarment.
We accordingly concluded that “these unique characteristics of the legal profession in respect to [DR 1-103 (a)] make the relationship of an associate to a law firm employer intrinsically different from that of the financial managers to the corporate employers in Murphy and Sabetay,” which “call[ed] for a different rule regarding the implied obligation of good faith and fair dealing” (Wieder, 80 NY2d at 637). We were careful to point out, however, that we did not mean to “suggest that each provision of the Code of Professional Responsibility should be deemed incorporated as an implied-in-law term in every contractual relationship between or among lawyers” (id.).
Finally, and at the heart of our holding, we observed that Wieder and the law firm were engaged in a “common professional enterprise,” the practice of law (id. at 638). Because of their common endeavor, Wieder and his firm were mutually bound to follow DR 1-103 (a). We specifically quoted the passage in Murphy (reprised in Sabetay) warning that in order for any condition to be implied in a contract, that condition must aid and further the agreement’s underlying terms, and held that DR 1-103 (a) did so because “[ujnlike Murphy and Sabetay, giving effect to an implied understanding — that in their common endeavor of providing legal services [Wieder] and the firm would comply with the governing rules and standards and that the firm would not act in any way to impede or discourage [Wieder’s] compliance — would be ‘in aid and furtherance of [the central purpose] of the agreement of the parties’ ” (id. [quoting Murphy, 58 NY2d at 304] [fourth alteration in original]).
*95 III.
We determined that the plaintiff in Wieder stated a cause of action for breach of an implied-in-law obligation in an at-will employment relationship because of the unique confluence of specific, related factors. Although Horn “strikes a sympathetic, and even a seductive, chord” (Horn v New York Times, 293 AD2d at 12 [Wallach, J., dissenting]), she has failed to plead facts that place her claim for breach of contract within the Wieder exception to the at-will employment rule.
First, Horn was employed as the Associate Medical Director of the Times’ in-house Medical Department, where whatever medical care and treatment she rendered was provided only to fellow employees and only as directed by her employer. Moreover, while Horn alleges that, in fact, her “primary responsibilities” “were to provide medical care, treatment and advice to employees of the Times,” the sole concrete example of these “primary responsibilities” offered in her complaint is the “determin[ation] if injuries suffered by Times employees were work-related, thus making the employees eligible for Worker’s Compensation payments.”
When Horn made assessments as to whether a Times employee had suffered a work-related illness or injury, she was surely calling upon her knowledge as a physician, but not just for the benefit of the employee. Rather, she was applying her professional expertise in furtherance of her responsibilities as a part of corporate management, much like Murphy and Sabetay and unlike Wieder. Concomitantly, to the extent that Horn, in fact, treated Times employees as part of her job responsibilities, her provision of these professional services did not occupy “the very core” or “the only purpose” of her employment with, the Times, unlike Wieder’s provision of legal services for his firm’s clients.
Next, the commonly understood ethical standards that the Times allegedly directed Horn to violate at the risk of losing her professional license include CPLR 4504 (the physician-patient privilege, an evidentiary rule) and provisions in the Education Law and the Rules of the Board of Regents.[3] These provisions were not central to Horn’s “conduct [of] her practice on [her] employer’s behalf.”
*96 We by no means intend to deny or belittle the importance of physician-patient confidentiality, which we just recently affirmed in Matter of Grand Jury Investigation in N.Y. County (98 NY2d 525 [2002]). Nonetheless, the principle of physician-patient confidentiality — unlike DR 1-103 (a) — is not a self-policing rule critical to professional self-regulation. More importantly, because of the absence of a common professional enterprise between Horn and the Times, the Education Law provisions cited by Horn do not impose a mutual obligation on the employer and the employee in this case.
Our dissenting colleague would compensate for the absence of a mutual obligation flowing from a common professional enterprise by substituting the notion that the Times knew or should have known about Horn’s professional responsibility to protect patient confidentiality. By loosing Wieder from its analytical moorings, however, the dissent would create a broad new exception to the presumption of at-will employment, applicable to hosts of professional employees.
The only exceptions to the employment-at-will rule ever adopted by this Court have involved very specific substitutes for a written employment contract: in Weiner, the employer’s express, unilateral promise on which the employee relied; in Wieder, the parties’ mutual undertaking to practice law in compliance with DR 1-103 (a), a rule so fundamental and essential to the parties’ shared professional enterprise that its implication as a term in their employment agreement aided and furthered the agreement’s central purpose. We have consistently declined to create a common-law tort of wrongful or abusive discharge, or to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts, as the dissent would have us do, and we again decline to do so. The good and sufficient reasons underlying this forbearance, so eloquently expressed *97 by Judge Jones in Murphy, have not changed,[4] and Horn has presented us with no compelling reason in the facts of this case to expand the Wieder exception to the at-will employment rule.
Accordingly, the order of the Appellate Division should be reversed, with costs; defendant’s motion to dismiss the first cause of action granted; and the certified question answered in the negative.

. Supreme Court dismissed the second cause of action on the ground that there is no separate cause of action for punitive damages. Horn did not appeal this aspect of the order.

. Murphy also alleged that he had been fired because he was over 50 years old.

. These provisions include Education Law § 6509 (9) (defining professional misconduct for those admitted to each of the 27 professions subject to licensure by the Department of Education to include “[c]ommitting unprofessional conduct, as defined by the board of regents”), coupled with section 29.1 (b) (8) of the Rules of the Board of Regents (defining professional misconduct *96 for those admitted to each of the 27 professions subject to licensure by the Department of Education to include “revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the patient or client, except as authorized or required by law” [8 NYCRR 29.1 (b) (8); see also 8 NYCRR 29.4 (a)]); and Education Law § 6530 (23) (specifying professional misconduct for the commission of which a physician licensee is subject to those penalties prescribed in section 230-a of the Public Health Law [e.g., censure and reprimand, suspension, limitation or revocation of license] to include the “[r]evealing of personally identifiable facts, data, or information obtained in a professional capacity without the prior consent of the patient, except as authorized or required by law”; cf. 8 NYCRR 29.1 [b] [8]).

. We note that the Legislature remains active in this area, just last year having enacted a new Whistleblower Law to protect certain health care workers (see Labor Law § 741).