UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICH FOOD SERVICES, INCORPORATED,
a Wyoming corporation; DEBRA K.
SINGLETARY; ROY A. BALDWIN,
　　　　　*Plaintiffs-Appellants,*

　　　　　　　v.

RICH PLAN CORPORATION, a Delaware
corporation; HERMAN S. GEIST;
HAROLD T. BROADHURST; WILLIAM R.
WILSON,
　　　　　*Defendants-Appellees,*

　　　　　　　and

RICHARD H. DARLING; R. BRUCE
EVANS; ROGER W. LORD; CHERYL A.
THOMPSON; W. E. ADAMSON;
DOUGLAS L. DAVIS; THOMAS A.
VOKAS; BRENT R. ADAMSON; BRYCE
A. JOHNSON,
　　　　　*Defendants.*

No. 03-1198

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-99-677-5-BR)

Argued: January 21, 2004

Decided: May 3, 2004

Before WILKINSON, MICHAEL, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** Richard William Farrell, FARRELL & LAMANTIA, Raleigh, North Carolina, for Appellants. Randall Maitland Roden, THARRINGTON SMITH, LLP, Raleigh, North Carolina, for Appellees. **ON BRIEF:** John S. Austin, FRANCIS & AUSTIN, P.L.L.C., Raleigh, North Carolina, for Appellee Rich Plan Corporation; F. Hill Allen, THARRINGTON SMITH, L.L.P., Raleigh, North Carolina, for Appellees Geist, Broadhurst, and Wilson.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

### OPINION

PER CURIAM:

This case arises out of a franchise relationship that went sour because, according to the franchisees, the franchisor and its principals breached the franchise agreements, engaged in fraud and misrepresentation, and failed to make certain required disclosures. The plaintiff-franchisees appeal the district court's order granting judgment as a matter of law to the defendants, the franchisor and its principals. We affirm.

I.

Debra Singletary and Roy Baldwin, the individual plaintiffs, were franchisees of defendant Rich Plan Corporation (Rich Plan). Singletary and Baldwin sold Rich Plan's food systems, including frozen food, freezers, and cooking equipment. Singletary and Baldwin operated through a succession of corporations, the last of which was plaintiff Rich Food Services, Inc. (We will refer to the three plaintiffs

collectively as the "plaintiffs.") Most pertinent to this appeal, the plaintiffs also sold comprehensive service agreements, called Full Service Agreements, designed by the franchisor, Rich Plan.

The plaintiffs' suit stems from damage to their business allegedly caused by an investigation by the North Carolina Attorney General into their business practices. One focus of that investigation was whether the Full Service Agreements constituted "insurance" under North Carolina law. If the Full Service Agreements were insurance, the plaintiffs had to comply with North Carolina insurance law to offer them legally. A North Carolina court eventually determined that the Full Service Agreements were insurance under North Carolina law, and the plaintiffs entered into a consent judgment approved by the North Carolina Attorney General.

The plaintiffs' complaint alleges, under various theories, that the defendants (Rich Plan and certain of its officers or directors) should have helped the plaintiffs avoid their legal troubles with the North Carolina Attorney General by disclosing that the Full Service Agreements might be insurance under North Carolina law. The case went to trial before a jury. At the close of all the evidence, the district court granted judgment as a matter of law to the defendants on all counts. The court concluded that some claims were time barred and that the plaintiffs could not prevail on the remaining claims because the defendants had no obligation either to advise the plaintiffs on how to sell Full Service Agreements legally in North Carolina or to otherwise assist them with their legal problems. The plaintiffs appeal.

## II.

We review de novo the district court's decision to grant the defendants' Fed. R. Civ. P. 50(a) motion for judgment as a matter of law. *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985). Judgment as a matter of law should not be granted if there is sufficient evidence for a reasonable jury to reach a verdict in favor of the non-moving party. *Id.*

## A.

As an initial matter, we reject the plaintiffs' argument that the district court — because of its prior rulings in the case — could not grant

the defendants' renewed motion (made at the close of all the evidence) for judgment as a matter of law. Judgment as a matter of law was reversible error, the plaintiffs say, because it was inconsistent with the court's prior rulings that denied the defendants' pretrial motion for summary judgment and their motion for judgment as a matter of law at the conclusion of the plaintiffs' case. The plaintiffs do not claim that the prior summary judgment ruling prejudiced them in presenting their evidence at trial; moreover, the fact that the prior rulings were made did not preclude the district court from reassessing the legal sufficiency of the plaintiffs' case when the defendants renewed their motion for judgment as a matter of law at the close of all the evidence. *See Malone v. Microdyne Corp.*, 26 F.3d 471, 475 n.4 (4th Cir. 1994).

B.

The plaintiffs' main argument on appeal is that the district court erred by concluding that some of their claims were time barred. These claims (Counts III, IV, and V) are based on Rich Plan's duty (as franchisor) to make certain basic disclosures at the beginning of the franchise relationship under federal and New York law. *See* 16 C.F.R. § 436.1 *et seq.*; N.Y. Gen. Bus. Law § 680 *et seq.* Under both laws a franchisor is not required to make any disclosures when the franchisor and franchisee merely renew or extend an existing franchise agreement. 16 C.F.R. § 436.2(k); N.Y. Gen. Bus. Law § 681(11). Specifically, no disclosure is required under federal law if the agreement is renewed or extended "where there is no interruption in the operation of the franchised business by the franchisee" and there are no material changes to the agreement. 16 C.F.R. § 436.2(k). A material change is "any fact . . . which has a substantial likelihood of influencing a reasonable franchisee . . . in the making of a significant decision relating to a named franchise business or which has any significant financial impact on a franchisee." 16 C.F.R. § 436.2(n). The New York state law exemption from disclosure is even more lenient on the franchisor: no disclosure is required if the agreement is renewed or extended "where there is no interruption in the operation of the franchised business by the franchisee." N.Y. Gen. Bus. Law § 681(11).

Here, the franchise relationship began in 1992. The district court ruled that any claim based on disclosures required in 1992 was barred

by the applicable statutes of limitation. The plaintiffs do not appeal this ruling. The same parties executed a second franchise agreement in 1996. Both sides agree that if the 1996 agreement was a new agreement for purposes of federal or New York franchise disclosure law, Counts III, IV, and V are not time barred because additional disclosures were required in 1996. However, if the 1996 agreement was a renewal or extension, those claims are time barred because Rich Plan would not have owed the plaintiffs disclosures within the limitation periods. We conclude, like the district court, that the 1996 agreement was a renewal under the applicable federal and New York laws.

The 1996 agreement does not explicitly say whether it is a new agreement or a renewal or extension of the existing agreement. However, the undisputed facts indicate that it was a renewal or extension for purposes of the franchise disclosure laws. For instance, both individual plaintiffs signed the 1992 and 1996 agreements as the sole franchisees in their individual capacities. The plaintiffs' business was not interrupted or changed by the execution of the 1996 agreement. The plaintiffs paid only one franchise fee, and that was in connection with the 1992 agreement. Both agreements were executed on nearly identical franchise agreement forms drawn up by the franchisor, Rich Plan. The only difference between the agreements was that the 1992 agreement contained amendments added at the insistence of the *franchisees*, while the 1996 agreement did not include any amendments. We need not decide if a change made solely at the instance of a franchisee would count as a "material change" for purposes of the federal disclosure regulations because the franchisees in this case testified that all of the changes they negotiated in 1992 were meaningless to them by 1996. Thus, the only functional difference between the two agreements is that the 1996 agreement added several years to the term of the franchise relationship.

To support their position that the 1996 agreement was a new agreement, the plaintiffs point primarily to the trial testimony of one of the individual defendants, Herman Geist. Geist acknowledged testifying at his deposition that Rich Plan "did not renew [the plaintiffs]. We gave them a new franchise," and he "didn't consider that a renewal." J.A. 1272-73. This, plus similar testimony from one plaintiff, indicates only that certain of the parties believed the 1996 agreement to be "new" in some abstract sense. The cited testimony does not help

to answer the question presented: whether, for purposes of triggering additional disclosure requirements under the franchise laws, the 1996 agreement could properly be considered a new agreement. We agree with the district court that the 1996 agreement was a renewal or extension under the franchise disclosure laws because it functioned only to lengthen an existing franchise relationship. *See* 16 C.F.R. § 436.2(k); N.Y. Gen. Bus. Law § 681(11). Rich Plan was not required, as a matter of law, to make the federal or New York franchise disclosures in 1996 on the facts presented here. Accordingly, all claims (Counts III, IV, and V) based on the argument that disclosures were required in 1996 are barred by the applicable statutes of limitation.

## C.

The plaintiffs also argue that the district court erred by entering judgment as a matter of law on the merits of their remaining claims. Again, we disagree.

Count I of the complaint alleges that Rich Plan breached the express terms of the franchise agreements and the implied covenant of good faith and fair dealing. On the contract claim the plaintiffs argue that Rich Plan breached its agreement by failing to provide them with a "unique" and "distinctive merchandising system," as promised in the franchise agreements. J.A. 1691, 1713. The statements in the agreements about the "unique" and "distinctive" nature of Rich Plan's products are simply too vague to be promises that those products can be offered in North Carolina without complying with North Carolina insurance law. *See St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F. Supp. 820, 831 (S.D.N.Y. 1988) (under New York law similar statements were too vague to be relied upon); *Performance Motors, Inc. v. Allen*, 186 S.E.2d 161, 166 (N.C. 1972) (applying North Carolina law, same). Even if we were inclined to conclude that Rich Plan promised to advise the plaintiffs about applicable North Carolina law on the basis of these and other similar statements in the agreements, we would have to conclude that the more specific terms of the agreements control. Both the 1992 and 1996 agreements expressly place the burden on the franchisees to "faithfully comply with all applicable laws or regulations," regardless of anything in the agreements to the contrary. J.A. 1693, 1715. As the

district court noted, all of the evidence indicates that the Full Service Agreements were legal in North Carolina as long as the plaintiffs complied with the applicable insurance laws. By the terms of the agreements, it was the plaintiffs' duty to comply with North Carolina law. Moreover, the agreements impose no duty on Rich Plan to advise the plaintiffs on compliance or to take any other action to assist the plaintiffs with their legal troubles. Thus, there was no breach.

The plaintiffs' claim based on the implied covenant of good faith and fair dealing fares no better. The plaintiffs argue that New York or North Carolina would imply a duty on the franchisor to provide the franchisee with legal advice or assistance in these circumstances. But there could be no such implied covenant here because it would conflict with the express contractual terms placing the burden on the franchisees to comply with all applicable law. *See Horn v. N.Y. Times*, 790 N.E.2d 753, 756 (N.Y. 2003); *Campbell v. Blount*, 210 S.E.2d 513, 515 (N.C. App. 1975). As a result, the district court did not err in granting the defendants' motion for judgment as a matter of law on Count I.

Count II of the complaint, alleging fraud, intentional misrepresentation, and negligent misrepresentation, is likewise deficient. The plaintiffs again rely on the representation in the agreements that the Rich Plan merchandising system is "unique" and "distinctive" to support their claims of fraud and misrepresentation. Just as these statements are too vague to be contractual promises, they are also too vague to be misrepresentations. *See St. Charles Cable TV*, 687 F. Supp. at 831; *Performance Motors*, 186 S.E.2d at 166. Count II of the complaint also alleges fraudulent concealment of the prospect that the Full Service Agreements would violate North Carolina law. However, the undisputed evidence is that Rich Plan had no knowledge that the Full Service Agreements were insurance under North Carolina law until the North Carolina Attorney General's investigation of the plaintiffs. The plaintiffs cite no authority — and we have found none — to support their contention that the failure of a franchisor to tell franchisees of every legal issue that might be confronted by franchisees under the varying laws of *other* states is fraudulent concealment under New York or North Carolina law. Thus, the district court's entry of judgment as a matter of law for the defendants on Count II was also proper.

Finally, the plaintiffs argue that their remaining claims in Counts III, IV, and VI (those not based on franchise disclosure requirements) survive because the same breaches of contract and misrepresentations that support Counts I and II allow them to recover under the theories presented in the remaining counts. We have already held, however, that no breach or misrepresentation occurred. Because the plaintiffs present us with no arguments for why their remaining claims survive absent a breach or misrepresentation, we conclude that judgment as a matter of law in favor of the defendants on the remaining counts was proper.

The judgment is

*AFFIRMED*.