*15-0453-bk*
*In re: Lehman Brothers Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of January, two thousand sixteen.

Present:

> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges*,
> JED S. RAKOFF
> > *District Judge.*\*

_____

MARY ANNETTE ORTEGÓN,

> *Appellant,*

> v.                                                                 15-0453-bk

JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.,

> *Trustee-Appellee.*

_____

For Appellant:                    ETHAN A. BRECHER, Law Office of Ethan A. Brecher, LLC, New York, NY

For Trustee-Appellee:             MEAGHAN C. GRAGG, James B. Kobak, Jr., Ned H. Bassen, Hughes Hubbard & Reed LLP, New York, NY

_____

\* The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Claimant-Appellant Mary Ortegón ("Ortegón") appeals a decision by the United States District Court for the Southern District of New York (Caproni, *J.*), affirming an order by the United States Bankruptcy Court for the Southern District of New York (Chapman, *B.J.*) granting the Trustee's motion for summary judgment on Ortegón's claim for breach of contract. Ortegón claims that Lehman Brothers, Inc., ("LBI") breached its contract with her by failing to pay her a $350,000 bonus, notwithstanding the undisputed facts that, first, LBI terminated its contractual relationship with Ortegón before she began any work contemplated by the contract, and, second, that LBI terminated this relationship prior to the official start date for performance contemplated by that contract. For the reasons stated below, we affirm the district court's decision. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal in this case.

"We exercise plenary review over a district court's affirmance of a bankruptcy court's decision[ and] review the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error." *In re AppliedTheory Corp.*, 493 F.3d 82, 85 (2d Cir. 2007) (per curiam). The Federal Rules of Bankruptcy Procedure import the summary judgment standard of Federal Rule of Civil Procedure 56(a). *In re DPH Holdings Corp.*, 580 F. App'x 10, 12 (2d Cir. 2014) (citing Fed. R. Bankr. P. 7056), *cert. denied sub nom. State of Michigan Workers' Comp. Ins. Agency v. Ace Am. Ins. Co.,* 135 S. Ct. 2804 (2015). Consequently, as before a district court, summary judgment is proper in a bankruptcy proceeding only if "after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor . . . 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.'" *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). We review a bankruptcy court's grant of summary judgment as we would a district court's similar grant, *de novo*. *See In re DPH Holdings Corp.*, 580 F. App'x at 12; *In re T.R. Acquisition Corp.*, 309 B.R. 830, 835 (S.D.N.Y. 2003).

"Under New York law, 'the initial interpretation of a contract "is a matter of law for the court to decide."'" *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)). If the court finds the contract, on its face, to be ambiguous, the court may accept extrinsic evidence as to the contact's meaning, but "'[i]f the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence' and it may then award summary judgment." *Id.* (quoting *Alexander & Alexander Servs., Inc., v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998)).

On January 16, 2007, Ortegón accepted an offer of employment at LBI by countersigning the letter containing the offer. The offer letter, which with her acceptance embodied the terms of the contract between the parties, codified the expected compensation for that employment. Included in the compensation package for "the performance year 2007" was a "minimum bonus in the amount of $350,000" that the letter stipulated would be paid unless Ortegón had "resigned or . . . been terminated from the Firm [for specifically enumerated causes]." App'x at 218. With the exception of this for-cause divestiture provision, the contract was for at-will employment. *See* App'x at 219 ("[E]ither you or the Firm may terminate the employment relationship at any time for any reason. . . ."). The contract stated that LBI "expect[ed Ortegón's] employment to begin on or about January 18, 2007," App'x at 218, a date that the record makes clear was initially Ortegón's

3

"start date," App'x at 212. On January 17, 2007, however, a representative from LBI notified Ortegón that LBI had postponed this start date indefinitely. On January 18, Ortegón met with LBI managers in connection with the offer. Shortly thereafter, Ortegón received a letter, dated January 19, 2007, which stated: "This is to confirm that, as we have discussed, Lehman Brothers has rescinded its offer of employment." App'x 116.

At the outset, we agree with Ortegón that the offer letter became a binding contract between Ortegón and LBI when she signed it. However, the courts below correctly rejected Ortegón's argument that she is entitled to the $350,000 minimum bonus (even though she never began the work contemplated by the contract nor appeared for work on any formal start date) on her theory that she became an "employee" of LBI by accepting the offer and by completing the pre-employment requirements described in the offer letter. As the district court concluded, the contract clearly provides that the bonus is part of Ortegón's compensation for her performance, and not a signing bonus to which Ortegón became entitled simply by agreeing to work for LBI regardless whether she ever commenced performance. The text of the contract describes the bonus as an item of Ortegón's "compensation" "[f]or the performance year 2007," App'x 38, rather than calling it a "signing bonus" or using any words to that effect. Supporting this understanding of the bonus, the text further states that the bonus is "payable at the time the Firm pays its annual 2007 bonus distribution," *id*., rather than upon acceptance of the letter or shortly thereafter. The contract's provision that the bonus amount "may be reduced in the event of an approved leave of absence during the applicable performance year," *id*., further links the bonus to performance under the contract – rather than to the mere signing of the offer letter. Ortegón concedes – and in any case the record is unambiguous on this point – that she never "began work" at LBI, in the sense that she never commenced any duties related to the position she had been

4

offered. App'x at 376. She further concedes that her formal "start date," the date on which the contract contemplated that performance would begin, was canceled prior to its arrival and that she was never assigned another – and again, the record is clear on this point. App'x at 212. Consequently, Ortegón cannot, in any sense, be said to have commenced performance under the contract, and she is not entitled to the bonus.

This is true even were we to conclude that the contract tied the bonus to Ortegón's status as an "employee" rather than to her performance, because the contract does not contemplate that Ortegón could be an "employee" independently of her performance. Instead, the contract provides that employment commences on a "start date," which is stated to be the beginning of the "*performance* year 2007." App'x at 38 (emphasis added). Further, although the contract notes that the "offer of employment is conditional" upon successful completion of the pre-employment process, it nowhere states that employment itself begins upon such completion. App'x at 39. Thus, the contract leaves no basis to conclude that Ortegón ever became an "employee" of LBI in any sense contemplated by the contract.[1]

The fact that Ortegón was ready and willing to perform and was prevented from doing so by LBI does not alter the analysis. Under the terms of the contract, Ortegón's employment was to be at will. In New York, an at-will employment relationship "may be freely terminated by either party at any time without cause or notice," *Horn v. N.Y. Times*, 100 N.Y.2d 85, 91 (2003), even before the employee has commenced performance, *see Mayer v. Publishers Clearing House*, 205

---

[1] As we find that the language of the contract unambiguously defines employee such that it is clear Ortegón never became an "employee" for purposes of the contract, we need not and do not address Ortegón's proffered extrinsic evidence addressing the question when the parties understood employment to begin.

A.D.2d 506, 507 (N.Y. App. Div. 2d Dep't 1994).   LBI thus had the right to end its relationship with Ortegón before she began working there.[2]

As a matter of contractual interpretation, Ortegón never became an employee of LBI and never commenced performance under the contract.   Ortegón thus never had any right to the bonus she seeks, and LBI did not breach any contract when it refused to give it to her.

Accordingly, and finding no merit in Ortegón's remaining contentions, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2]  Because the contract was for at-will employment, the reason for LBI's decision to terminate the contract is immaterial.   Although Ortegón earlier filed a complaint before the Equal Employment Opportunity Commission alleging that LBI terminated the contract for improper reasons, *see* App'x at 214–15, she has made no such claim in these proceedings.