Gee v Becton, Dickinson & Co. (2024 NY Slip Op 51475(U))

[*1]

Gee v Becton, Dickinson & Co.

2024 NY Slip Op 51475(U)

Decided on October 29, 2024

Supreme Court, Warren County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 29, 2024
Supreme Court, Warren County

Carl Gee, Plaintiff,

against
Becton, Dickinson and Company; JOHN OTOUPAL, Team Leader; 
 SHANEIKE AYALA, AccessHR Advisor; JOHN DOE #1; JOHN DOE #2, JANE DOE #1; JANE DOE #2, Defendants.

Index No. EF2023-71888

Carl Gee, pro se plaintiff.
Epstein, Becker & Green, PC New York (Lauri F. Rasnick and Lori A. Medley, of counsel) for defendants.

Robert J. Muller, J.

Plaintiff commenced this action on October 16, 2023 alleging defamation per se and breach of contract. Presently before the Court is defendants' pre-answer motion to dismiss based upon documentary evidence (CPLR 3211[a][1]) and failure to state a cause of action (CPLR 3211[a][7]). 
It is not disputed that on December 5, 2022 plaintiff was hired by Becton, Dickinson and Company (hereinafter BD) as an Associate Machinist. Defendant John Otoupal (hereinafter Otoupal) is a Team Leader and was plaintiff's supervisor at BD's facility in Glens Falls, New York. Shaneike Ayala (hereinafter Ayala) is the AccessHR Advisor. 
Prior to being hired, plaintiff received a letter dated November 22, 2022, signed by Otoupal, offering him employment with BD as an Associate Machinist at an hourly rate of $23.00 per hour with a $1.10 pay shift differential (hereinafter Offer Letter). Shortly thereafter, plaintiff received a copy of BD's "Glens Falls Operation Associate Handbook" (hereinafter Handbook) and Associate Acknowledgement & Agreement which was signed by plaintiff on December 5, 2022.
According to plaintiff, in May 2023 he was diagnosed with a tumor and lesions on his prostate. Plaintiff asserts he advised Otoupal that he needed time off for medical appointments but claims Otoupal informed him he could not take time off because he had to be employed for one year before he was permitted to take medical leave. In June 2023, plaintiff became ill at work and Otoupal advised plaintiff to go home and if he "had [paid time off he] could take it, [receive] no pay, or make up[the] time" (Compl. ¶38-39). On August 28, 2023 plaintiff called [*2]off sick, leaving a telephone message on the appropriate voicemail. 
Two days later, BD suspended plaintiff with pay after receiving complaints that he had exposed himself to another employee, made suggestive comments of a sexual nature and inappropriately touched an associate in a sexual manner at work. (Compl. ¶¶41, 43-45, 48; Exhibit 2) After an investigation, Otoupal sent a termination letter to plaintiff on September 22, 2023 advising, inter alia:
"The investigation substantiated you touched another associate in a sexual manner and exposed yourself. It was also substantiated that you have made suggestive comments of a sexual nature to other associates and engaged in inappropriate touching at work. These incidents are violations of BD's Global Harassment and Discrimination Prevention Policy".
In addition to the inappropriate behavior, the termination letter cited to plaintiff's unsatisfactory attendance record and abuse of allowable break times as reasons for his termination of employment. Ayala, as AccessHR Advisor, was copied on the letter along with "HR File" (see Exhibit 2, pg. 2).
Defendants now move to dismiss the breach of contract claim under CPLR 3211(a)(1) and both causes of action, defamation per se and breach of contract, under CPLR 3211(a)(7). "[T]he standard to be applied on a motion [of this type] is both familiar and well settled — '[the Court] must afford the complaint a liberal construction, accept as true the allegations contained therein, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory". " (Rodriguez v Jacoby & Meyers, LLP, 126 AD3d 1183, 1185 [3d Dept 2015], lv denied 25 NY3d 912, [2015], quoting He v Realty USA, 121 AD3d 1336, 1339 [3d Dept 2014] [internal quotation marks and citations omitted]; see CPLR 3211 [a] [7]; Snyder v Brown Chiari, LLP, 116 AD3d 1116, 1117 [3d Dept 2014]).
Defamation per se
"The elements of a cause of action sounding in defamation [are] as follows: (1) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (2) published without privilege or authorization to a third party, (3) amounting to fault as judged by, at a minimum, a negligence standard, and (4) either causing special harm or constituting defamation per se." (Levy v. Nissani, 179 AD3d 656, 657—658, [2d Dept 2020]) "[O]n a motion to dismiss pursuant to CPLR 3211(a) (7) [the Court] consider[s] only 'whether any reading of the complaint supports the defamation claim'" (Trump Vil. Section 4, Inc. v Bezvoleva, 161 AD3d 916, 917 [2018], quoting Davis v Boeheim, 24 NY3d 262, 272, [2014]; see Silsdorf v Levine, 59 NY2d 8, 12 [1983]). A defamation plaintiff must also allege special damages unless they fit within an exception in which damages are presumed. As relevant here, an exception includes statements charging plaintiff with a serious crime.[FN1]
(Sharratt v Hickey, 20 AD3d 734, 734 [3d Dept 2005]) "'Whether a plaintiff can ultimately establish its allegations is not part of the calculus'" ( EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19, 832 N.E.2d 26, 799 N.Y.S.2d 170 [2005]).
Plaintiff's complaint alleges defendants "in a grossly irresponsible manner without due consideration for standards of information gathering, discussing with others and dissemination ordinarily followed by responsible parties deliberately and maliciously caused the Plaintiff extreme emotional distress by creating, publishing, and distributing a letter with false allegations." (Compl. ¶52) Plaintiff further alleges the defendants permitted these "false allegations to be published in the Plaintiff's employment files" (Compl. ¶53) and "[d]efendants by creating, publishing, and distributing a letter with false allegations, essentially falsely [stated] the Plaintiff committed a crime under NY Penal Law sections 130.52 [forcible touching] and 245.01 [exposure of a person]"(Compl. ¶ 62). 
Defendants argue that the defamation per se action must be dismissed because it is based solely upon conclusory allegations that the termination letter contains "false allegations", the allegation that the letter was "published" in plaintiff's employment file is insufficient because it is privileged communication, and plaintiff's allegations that he was accused of committing the misdemeanor crime of forcible touching and the violation of exposure of a person do not constitute "serious crimes" as required in a defamation per se action.
Pursuant to the strict pleading requirements for defamation actions, the particular words complained of shall be set forth in the complaint, CPLR 3016[a], which must also contain the time, place, and manner of the allegedly false statements and specify to whom such statements were made. A complaint must sufficiently identify the specific third persons to whom the statements were allegedly made or identify which of the multiple defendants made any of the alleged statements (Jackie's Enters., Inc. v Belleville, 165 AD3d 1567, 1567 [3d Dept 2018]; Nofal v Yousef, 228 AD3d 772, 772 [2d Dept 2024]) 
Here, although the complaint itself fails to adequately allege the specific words used, plaintiff's attachment of Otoupal's September 22, 2023 letter of termination as Exhibit 3 to the complaint corrects this deficiency and identifies the defendant alleged to have made the statements. 
Plaintiff also contends the termination letter containing the defamatory statements were "published" and "maintained" in his employment file at BD but defendants assert this internal documentation is privileged, having been made by one person to another upon a subject in which they have a common interest. "To the extent that memoranda are prepared for internal use in connection with an employee review, or are placed in a personnel file they are qualifiedly privileged" (Dillon v City of NY, 261 AD2d 34, 35 [1st Dept 1999]). However, this qualified privilege may be dissolved "if a plaintiff can demonstrate that a defendant spoke with spite or ill will (common-law malice) or with a high degree of awareness of the statements' probable falsity (constitutional malice)" (Shaw v Club Mgrs. Assn. of Am., Inc., 84 AD3d 928, 930 [2d Dept 2011] [internal citations omitted]).
The complaint alleges that defendants BD, Otoupal and Ayala "maintain the falsity in plaintiff's employment files, acted maliciously and with knowledge or [were] recklessly indifferent to the falsity, published the letter to those people without a legitimate interest in the [p]laintiff's termination knowing that the allegations were false, acted with reckless disregard for the statement's truth or falsity " (Compl. ¶¶54, 65). Contrary to defendants' argument, " . . . the burden does not shift to the nonmoving party on a motion made pursuant to CPLR 3211(a)(7), [and] a plaintiff has 'no obligation to show evidentiary facts to support [his] allegations of malice on a motion to dismiss pursuant to CPLR 3211(a)(7)'" (Shaw v Club Mgrs. Assn. of Am., Inc., 84 AD3d 928, 931 [2d Dept 2011][internal citations omitted]). Thus, to the [*3]extent the defendants' statements may be protected by the common interest privilege, the allegations of malice that were set forth in the complaint and plaintiff's affidavit preclude dismissal of the first cause of action pursuant to CPLR 3211(a)(7). (Trump, 161 AD3d at 917; see Liberman v Gelstein, 80 NY2d 429, 438, [1992])
Next, plaintiff claims that the termination letter was defamatory per se because it charged him with criminal conduct. Defendants disagree, arguing forcible touching and indecent exposure cannot be considered "serious offenses" as required in a defamation per se action, because they are low level crimes, a misdemeanor and violation, respectively.
While the Court agrees not every accusation of unlawful behavior is slanderous per se, "[w]ith the extension of criminal punishment to many minor offenses, it [is] obviously necessary to make some distinction as to the character of the crime, since a charge of a traffic violation, for example, would not exclude a person from society, and today would do little, if any, harm to his [or her] reputation at all" (Prosser § 112, at 789 as cited in Liberman v Gelstein, 80 NY2d 429, 435 [1992]). In making this distinction, this Court is not persuaded that accusations of inappropriate sexual contact and exposure of oneself are not serious offenses as one is punishable by up to one year incarceration and both allegations could certainly harm plaintiff's reputation.
Accordingly, accepting the plaintiff's facts as alleged in the complaint as true, and affording the pleading a liberal construction and plaintiff the benefit of every possible favorable inference, the Court finds that plaintiff's complaint succeeds in stating a claim for defamation per se.
Breach of contract
It is well-settled that "[t]he essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance under the contract, the defendants' breach of that contract, and resulting damages." [Blank v Petrosyants, 203 AD3d 685, 688 (2d Dept 2022), quoting Liberty Equity Restoration Corp. v Yun, 160 AD3d 623, 626 (2d Dept 2018)].
In support of his breach of contract claim, plaintiff alleges defendants entered into an employment agreement with plaintiff and defendants breached the terms of that agreement, as outlined in the Handbook and oral statements made by Otoupal when: (1) he was hired for the second-shift with a $2.00 an hour differential added to his base pay of $23.00 per hour but instead was only paid a "first-shift" differential of $1.10 per hour (Exhibit 1, pg. 12); (2) defendants failed to grant plaintiff paid sick leave (id., pgs. 23-24)[FN2]
; (3) plaintiff was terminated in retaliation for calling out sick on August 28, 2023 (id., pg. 24); and (4) defendants provided plaintiff with a clothing allowance in the amount of $300.00 when he was entitled to receive $650.00 (id., pg. 38) Plaintiff further alleges damages include the difference in the shift differential, clothing allowance, and lost income. 
Defendants' motion to dismiss contends plaintiff has failed to state a cause of action because New York law is clear that plaintiff was an at-will employee, and the Handbook, company policies and the provisions contained therein do not constitute a contract or any guarantees given the disclaimers contained within the Handbook. Defendants further assert in their reply that documentary evidence, namely the Offer Letter, states plaintiff would receive a $1.10 shift differential and not $2.00 per hour as alleged by plaintiff, thereby refuting plaintiff's [*4]allegations and warranting dismissal under CPLR 3211(a)(1).[FN3]

Preliminarily, the Court agrees with defendants that without some form of contractual agreement establishing a durational period employment is terminable at will by either the employer or the employee, and neither has a cause of action against the other based on the termination of employment ( emphasis added, see Martin v NY Life Ins. Co., 148 NY 117, 121 [1895]; Horn v NY Times, 100 NY2d 85 [2003]; Myers v Coradian Corp., 92 AD2d 643 [3d Dept 1983]) New York does not recognize the tort of wrongful discharge and employees at-will can be terminated "at any time for any reason or for no reason" ( Murphy v American Home Prods. Corp., 58 NY2d 293, 297, 300-301 [1983]), except where such discharge violates a statutory prohibition. Furthermore, there is no exception for firings that violate public policy such as, for example, discharge for exposing an employer's illegal activities [FN4]
( id. at 301; as cited in Lobosco v NY Tel. Co./NYNEX, 96 NY2d 312, 316 [2001]). Therefore, to the extent that plaintiff attempts to assert or imply he was wrongfully discharged, such action would be improper. [FN5]

Plaintiff asserts he was entitled to certain rights and benefits during his employment based upon the contents of the Handbook.[FN6]
Given the liberal standards governing this CPLR 3211(a)(7) motion, the Court disagrees that plaintiff's breach of contract action should be dismissed simply because he was an "at-will" employee or because certain disclaimer language in the Handbook undercuts plaintiff's claim.[FN7]
Being that an employee handbook can conceivably [*5]create a contract between an employee and employer under appropriate circumstances, and plaintiff has alleged a contract exists, the Court finds that whether or not plaintiff was entitled to certain benefits, as outlined in the Handbook, is properly addressed after discovery, not a pre-answer motion to dismiss (see Nice v Combustion Engineering, Inc., 193 AD2d 1088, [4th Dept 1993]).
Similarly, "[a] motion pursuant to CPLR 3211 (a) (1) . . . may be properly granted only if the documentary evidence utterly refutes the plaintiff's factual allegations, conclusively establishing a defense as a matter of law " (Koziatek v SJB Dev. Inc., 172 AD3d 1486, 1486 [3d Dept 2019], quoting Calhoun v Midrox Ins. Co., 165 AD3d 1450, 1450, [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; see Doller v Prescott, 167 AD3d 1298, 1299, [3d Dept 2018]).
Defendants again rely upon BD's Handbook, Employment At Will Policy, Associate Acknowledgement & Agreement and Offer Letter as documentary evidence to demonstrate plaintiff was an "at-will" employee. However, these documents do not utterly refute that plaintiff was entitled to paid sick time, or a higher clothing allowance. In fact, the Handbook sets forth the clothing allowance policy and suggests a machinist would be entitled to a yearly stipend of $600.00 (Exhibit 1, pg. 38), as plaintiff alleges. Likewise, the sick time policy in the Handbook states in part,
" [b]ased on the New York State Sick Leave Law (NYSSLL) enacted in 2020, associates are entitled to earn 1 hour of PTO for every 30 hours worked. Associates actively on our payroll as of January 1st of the calendar year will qualify for the total 56 hours in the following manner: 16 hours on January 1st, 5 hours monthly, beginning on March 1"- October 1". (id. pg. 23)
Additionally, defendants assert the Offer Letter rebuts plaintiff's assertion he is entitled to a higher shift differential pay because it states he will receive $1.10, not $2.00 per hour as alleged by plaintiff who asserts this higher differential was an oral promise by Otoupal. (Plaintiff's Reply ¶10). These assertions present factual issues not properly determined on a motion to dismiss under CPLR 3211. (see Ryan v Kellogg Partners Inst. Servs., 19 NY3d 1 [2012]; Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc., 115 AD3d 128, 134 [1st Dept 2014] (noting that "the documentary evidence simply raises 'disputed issues of fact,' which is not enough for a dismissal under CPLR 3211[a][7]"). Accordingly, defendants' motion to dismiss plaintiff's breach of contract claim pursuant to CPLR sections 3211(a)(1) and (7) is denied.
Next, defendants move to dismiss the breach of contract claim against Otoupal and Ayala, contending they are not signatories to the alleged Handbook contract and therefore cannot be held liable for any asserted breach. It is a "well-settled principle that a corporate officer is not normally liable in his or her personal capacity on contracts executed on behalf of the corporation unless the officer expresses some intention to be personally bound, for the officer is in effect an agent of the corporate principal" (see W. Joseph McPhillips Inc. v Ellis, 278 AD2d 682, 683 [3d Dept 2000]). Plaintiff simply alleges Otoupal and Ayala are employees and, or, a supervisor of BD and does not suggest nor can it be inferred from the complaint that these defendants intended to be personally liable for plaintiff's employment or terms thereof. Therefore, plaintiff's breach of contract action against Otoupal and Ayala are dismissed.
To the extent not specifically addressed herein, the parties' remaining contentions have [*6]been considered and are either academic or without merit.
Having thus considered defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss along with the supporting Affirmation of Lori Medley dated December 1, 2023, Plaintiff's Reply Affidavit dated December 12, 2023, Reply Affirmation of Lori Medley, Esq. and accompanying exhibits (NYSCEF Doc. No. 4). Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss (NYSCEF Doc. No. 6), and Affirmation of Jessica Sankey dated January 11, 2024 with exhibits (NYSCEF Doc. No. 7), plaintiff's Reply Affidavit sworn to on April 5, 2024 (NYSCEF Doc. No. 10) and defendants' letter dated April 9, 2024 (NYSCEF Doc. No. 11); it is hereby
ORDERED that defendants' pre-answer motion to dismiss the defamation cause of action pursuant to CPLR 3211(a)(7) is denied in its entirety; and it is further
ORDERED that defendants' motion to dismiss the breach of contract cause of action against defendant BD pursuant to CPLR sections 3211(a)(1) and (7) is denied; and it is further
ORDERED that defendants motion to dismiss the breach of contract cause of action against defendants Otoupal and Ayala is granted; and it is further
ORDERED that defendants' are hereby directed to serve their answer to the complaint within thirty (30) days of the date of service of this Decision and Order with notice of entry thereon; and it is further
ORDERED that any relief not specifically addressed herein has nonetheless been considered and is expressly denied.
The original of this Decision and Order has been filed by the Court. Plaintiff is directed to serve all defendants with notice of entry. 
Dated: October 29, 2024
Lake George, NY
ROBERT J. MULLER, J.S.C.
ENTER:

Footnotes

Footnote 1:When statements fall within one of the exceptions the law presumes that damages will result, and they need not be alleged or proven. (Liberman v Gelstein, 80 NY2d 429, 435 [1992])

Footnote 2:Plaintiff references this to also be a violation of Labor Law §196.

Footnote 3:Defendants argue, for the first time in their reply papers, that the complaint should be dismissed pursuant to CPLR 3211(a)(1). When this argument is addressed by plaintiff in his April 5, 2024 papers, defendants quickly moved to strike that submission as an impermissible "sur-reply" pursuant to 22 NYCRR 202.8-c notwithstanding the fact that this reply addresses this newly raised basis for dismissal. This court will consider plaintiff's April 5, 2024 brief to the extent it addresses arguments for dismissal pursuant to CPLR 3211(a)(1).

Footnote 4:Plaintiff references being demoted and terminated because he refused to participate in questionable actions by Otoupal including "steel[ing][sic] specs and blue prints of parts .from [a] competitor" (Comp. ¶¶24, 35; Reply ¶4)

Footnote 5:New York does, however, recognize an action for breach of contract when plaintiff can show that the employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy in accepting employment ( Weiner v McGraw-Hill, Inc., 57 NY2d 458; Lobosco v NY Tel. Co./NYNEX, 96 NY2d 312, 316 [2001]) Plaintiff has made no such allegations in this action.

Footnote 6:Notably, the numerous cases upon which defendants rely involve the termination of an at-will employee, not the employee's rights to benefits recited in an employee handbook while he was employed.

Footnote 7:Defendants assert that the Handbook expressly states, "Nothing contained in the Handbook will be construed as creating a promise of benefits or guarantee of employment for any specific duration".